## TERRE HAUTE & INDIANAPOLIS R. R. Co.

### v.

## MARTIN V. ELAM.

RAILROAD FENCES—PUBLIC HIGHWAYS.—Railroads must be fenced or inclosed with gates or bars at all road crossings which are not used and treated by the people and road authorities as public highways. The place where the stock was killed, in this case, *held*, not to be a public road crossing; therefore the railroad company, having failed to fence at such place, is liable.

APPEAL from the County Court of Fayette county; the Hon. JACOB FOUKE, Judge, presiding.    Opinion filed November 24, 1886.

Messrs. ASHCRAFT & STILLMAN, for appellant.

Messrs. FARMER & BROWN, for appellee.

WILKIN, P. J.    This action is brought to recover the value of certain hogs of appellee killed by a locomotive of appellant. The only question presented for our decision is, whether or not the place at which the animals were killed was a public road crossing, within the meaning of section 62, chapter 114, R. S., requiring railroads to fence their tracks *" except at the crossings of public roads and highways."*    There is no claim on the part of appellant that a public road, or, in fact, any road whatever, existed at that place when its railroad was built. There was a traveled way in that vicinity, but it is not pretended that it was in any sense a public road or highway.    In 1868 one Heninger conveyed to appellant a right of way over his land, and in the deed it was stipulated that it should make a good crossing on the land conveyed, where said Heninger should designate.    In pursuance of that agreement a crossing with gates or bars was made about the time the railroad was first put in operation.    After several years Heninger requested appellant to change the crossing and place it farther east and put in cattle guards instead of the gates, and that

was done on its present location near Heninger's east line. Heninger owned the lands north of the railroad and west of the line of this crossing, which were at the time vacant. Parties owning east of him fenced their lands before he did, placing their fences substantially on the line. When he inclosed his land he left on the east side what he calls a "narrow passway," leading from the railroad up north to his house, about three quarters of a mile. He afterward sold the north part of his lands to William Brown, and at the same time sold him "a strip two rods wide off of the east side" of that which he retained, thus giving Brown a roadway to the crossing in question. It is shown by the evidence that the northern terminus of the road is at Brown's house and has no connection at that point with any road, public or private. At the south, near appellant's right of way, it intersects the St. Louis road or crossing; it extends about a quarter of a mile south to a farm house and there terminates. The road north from the railroad has been in its present location about ten or twelve years. For a time Brown closed it up with a gate about a half mile north of the crossing. Brown has been allowed by the road authorities to work out his road tax on it, and has placed it in good condition. He is an extensive farmer and uses the road a great deal. Persons visiting his place and that of one or two of his neighbors travel it more or less frequently. Heninger testifies that it was not his intention to dedicate a road to the public in leaving the "passway." Brown was not sworn on the trial. An attempt is made to maintain that this is a public, or public and private road, by dedication on the part of Brown. The evidence, we think, wholly fails to show such an intention on his part; on the contrary, his closing it with a gate for a time shows a contrary intention. Neither has the public accepted it as a dedication. There is nothing in the evidence to show that Brown could not at any time close it up entirely or put gates or bars across it, as might best suit his personal convenience. The position that the place at which the stock was killed must be held either a public road or farm crossing, is not tenable. It may be neither. In fact, from the evidence

in the case, it is neither.   The answer to the inquiry, what shall railroads do with this character of roads, is, fence them up, unless, by their contract with individuals, they have agreed to keep them open.   What appellant did at this place was not done in order to comply with the requirements of the statute, nor in obedience to any duty it owed the public, but in fulfillment of its contract with Heninger.   We do not understand that appellant would not be allowed to put gates or bars at this crossing as insisted upon by its counsel, but even if the agreement with Heninger should be so construed, it can not be heard to say that it is exempt from liability to third parties for stock killed at a place where the statute required it to fence because of such a contract with an individual.   We are not to be understood as holding that railroads may fence up all roads not coming within the statutory definition of public highways, nor that, in order to exempt them from liability for killing stock at public road crossings, it must appear that the road has been legally established.   Such is manifestly not the spirit of the statute.   It does, however, mean that railroads shall be fenced or inclosed with gates or bars at all road crossings which are not used and treated by the people and road authorities as public highways.   The place at which appellee's stock was killed was not a public road crossing, and appellant, having failed to fence or otherwise inclose its track at that place so as to prevent the animals from getting on it, by the terms of the statute is liable.

Affirmed.