The Pennsylvania Company *v* Spaulding.

No. 13,453.

THE PENNSYLVANIA COMPANY *v.* SPAULDING.

RAILROAD.—*Private Crossings.—Land-Owner Required to Keep Gates Closed.— Statute.—Negligence.*—Under the provisions of the act of April 8th, 1885, the land-owner for whose benefit a private farm crossing is maintained is required to keep the gates thereto closed, and the railroad company is exonerated from liability for damages resulting from his failure so to do, except where the injury or killing of animals is caused by the negligence of its servants.

SAME.—*Cattle-Guards and Cross-Fences at Private Crossings not Required.*—A railroad company is not required to construct or maintain cattle-guards or cross-fences at a private farm crossing.

From the Bartholomew Circuit Court.

*S. Stansifer*, for appellant.

*W. Dixon*, for appellee.

ZOLLARS, C. J.—Appellee's animal was killed upon appellant's railway by a train of its cars subsequent to the taking effect of the acts of 1885 in relation to fencing railways. Acts 1885, pp. 148, 224.

The animal strayed into a field of one Spurgin, whose land is separated by appellant's right of way. From there it passed to the railway through a gate at a private farm crossing, constructed for the use and benefit of Spurgin long before the passage of the acts of 1885. After the passage and taking effect of those acts the railway company neglected to keep the gates closed, although it had knowledge that they were left open by Spurgin. There being no wing or cross-fences from the gates to the railway track, and no cattle-guards across the track, the animal passed along the right of way or track for some fifty yards from the place of entry, and was there killed.

The foregoing facts are substantially those stated in appellee's complaint. In addition thereto, the manner in which

the railway company acquired its right of way in 1851 is stated, with the conclusion by the pleader that it was not acquired by condemnation. And so, in the answer by the railway company, the manner of acquiring the right of way is stated, substantially as in the complaint, with the pleader's conclusion that it was by condemnation proceedings.

Those matters seem to have been inserted in the pleadings upon the theory, on the part of appellee at least, that the manner in which the right of way was acquired might affect the liability of the railway.

No question of negligence in the killing of the animal is made. Appellee's case is based upon the ground that, as the gates were left open, the railway was not securely fenced, and that, therefore, the railway company is liable under the statutes in relation to fencing railways.

The liability of the railway company in this case, as in the recent case of *Hunt* v. *Lake Shore, etc., R. W. Co., post,* p. 69, is dependent upon the construction, scope and effect to be given to the acts of April 8th and 13th, 1885, *supra.*

Appellee contends :

1st. That the act of April 8th is applicable only where the private crossing is over a right of way acquired by "condemnation and appropriation."

2d. That the act is applicable only to crossings constructed since it took effect.

3d. That the purpose of the act was to enable adjacent land-owners, whose land is separated by the railway, to force a private crossing over the track, and to define the rights and liabilities of such land-owners and railway company as between them, and that it in no way affects the liabilities of railway companies to others than the persons for whose convenience such crossings may be constructed and maintained.

4th. That section five of the act of April 13th, 1885, is invalid, because not embraced in the title of the act.

Appellee's counsel further states his position thus : " Even if the acts of April 8th and 13th, 1885, as between the pub-

The Pennsylvania Company *v.* Spaulding.

lic and railway company, relieve the company from all duty
of keeping gates at private crossings closed, yet they do not
repeal by any implication that portion of section 4031, R. S.
1881, under which it is the duty of railway companies to
put cattle-guards at private crossings. * * * In other words,
if the public have, by the acts of 1885, lost the right to look
to both the railway company and the land-owner to keep
gates at private crossings closed, they have not lost the right
to demand of railway companies that cattle-guards shall be
placed at such crossings."

With the exception of the last, the foregoing questions
were made and argued in the case of *Hunt* v. *Lake Shore,
etc., R. W. Co., supra.* Those questions were examined and
decided in that case adversely to appellee's contention here.
With the decision in that case we are satisfied, and need not
repeat what was there said. It remains to examine the last
position stated by counsel.

Without determining here whether or not any portion of
former statutes in relation to fencing railways is in force not-
withstanding the acts of 1885, it is sufficient for the pur-
poses of this case to hold that it must be regarded as an
assumption to say that it was the duty of railway companies,
under section 4031, R. S. 1881, to construct and maintain
cattle-guards at private farm crossings. Such an inference
might be drawn from the case of *Grand Rapids, etc., R. R.
Co.* v. *Jones,* 81 Ind. 523, but that case was explained and
limited in the later case of *Wabash R. W. Co.* v. *Williamson,*
104 Ind. 154. It was there said: "What was said in that
case [the Jones case], however, as to the necessity of having
suitable cattle-pits at an established crossing of a railroad
track, was rather of an abstract character, and had a proper
reference more particularly to crossings of public highways,
and to such other places on railroad tracks as are generally
used as crossings, with the consent of the proper railroad
companies." It was further said that in the Jones case the

The Pennsylvania Company v. Spaulding.

liability of the railroad company was placed upon the ground that the gate at the crossing had not been kept closed.

In the case of *Bond* v. *Evansville, etc., R. R. Co.*, 100 Ind. 301, it was held, in effect, that, under the statutes prior to those of 1885, which included section 4031, R. S. 1881, no duty rested upon railway companies to construct wing fences and cattle-guards at private farm crossings.

Of course, to so place cattle-guards as to keep animals from the track at a private crossing would be to destroy the crossing for all purposes; and to place such guards across the track on either side of such crossing would be of no avail without fences from the guards to the fences on either side of the right of way. Such guards and fences would confine the crossing to a fixed limit, and prevent animals from straying along the track beyond it, but it is not at all certain that they would materially lessen the liability of injury or death to animals passing through the open gates.

It is altogether probable that on account of such guards and cross-fences, and the consequent want of means of escape along the side of the track, frightened animals, inside the open gates, might run upon the track at the crossing and be there injured or killed. However that might be, it is certain that, under the statutes prior to the acts of 1885, such guards and cross-fences would not exonerate the railway company from liability for the injury or death of animals going upon the track through gates at farm crossings.

In the case of *Indianapolis, etc., R. W. Co.* v. *Thomas*, 84 Ind. 194, the railway company sought to protect itself from liability by showing that it had placed cattle-guards at the private crossing. The defence was held to be insufficient.

The ground of liability in all the cases under those statutes was the failure of the railway company to maintain a secure fence, which included the keeping of gates at farm crossings closed, and not the want of cattle-guards or cross-fences.

Railway companies were held bound to keep their rights

of way securely fenced, and to thus keep animals from their tracks. If they neglected to do so, and animals passed to the track through insecure fences, or open gates at farm crossings, and were there injured or killed, the companies were held liable, except to the owner for whose benefit the crossing was maintained, without any reference to what may have been done in the way of placing cattle-guards or cross-fences at such crossings.

The duty to fence the right of way of railway companies has been, and now is, a purely statutory duty. Under former statutes, that duty resulted from the liability imposed by those statutes. The duty, therefore, extended to nothing except what was necessary to escape that liability. That being so, it would seem to follow that as the construction and maintenance of cattle-guards and cross-fences at private farm crossings would not exonerate railway companies from liability for the injury or killing of animals upon the track at such crossings, there was no duty resting upon them to construct or maintain such guards and fences.

By the statutes of 1885, Acts 1885, pp. 148, 224, the duty of fencing portions of their tracks, as therein specified, including all places where farm gates and crossings could be of service to any one, is positively enjoined upon railway companies. As we have said, that duty is purely a statutory duty. Railway companies might have escaped, and may still escape, the liability imposed by the several statutes, by performing the duty as the statutes required, and still require, and they could not, and can not, escape it in any other way.

The statutes have at no time required cattle-guards and cross-fences to be placed at private crossings. They have been enacted and construed upon the theory that gates at such crossings should be kept closed, so as to prevent the ingress of animals to the railway track; that when thus closed, there is no need of cattle-guards and cross-fences at such crossings; and that the construction and maintenance

of them by railway companies at such crossings will not exonerate them from whatever liability there may be for the injury or killing of animals that go upon the track through the open gates.

Under the acts of 1885 the duty on the part of railway companies to fence the specified portions of their tracks does not result from the liability prescribed, as under former statutes; but the liability is fixed for a neglect of the duty positively enjoined. Under former statutes there was no duty where there was no liability. Under the acts of 1885 there is no liability where there is no duty. As already stated, by those acts the duty of fencing their tracks as therein specified is positively enjoined upon railway companies. Those acts, however, transfer from the railway company to the land-owner, for whose convenience private farm crossings are maintained, the duty of keeping the gates at such crossings closed.

Section five of the act of April 13th, 1885, provides that all gates and bars at farm crossings shall, in the absence of a contract or agreement to the contrary, be constructed and maintained and kept closed by the owner of such crossing.

Sections two and three of the act of April 8th, 1885, make it the duty of the land-owner, for whose benefit the crossing is maintained, to keep the gates closed, and exonerate the railway company from liability, except where the injury or killing of animals is caused by the negligence of its servants.

Those acts no more require cattle-guards and cross-fences at private farm crossings than did the former statutes. It was not contemplated in the passage of the acts that gates at such crossings shall be left open, although the duty of keeping them closed is transferred from the railway company to the land-owner for whose benefit they may be maintained. If kept closed, as it is contemplated they shall be, there will be no need of cattle-guards and cross-fences at the crossing. If left open by the land-owner, such guards and fences would not prevent injury to animals upon the crossing. Cattle-

guards and cross-fences were held to be necessary under former statutes, and are required by the acts of 1885 to be placed at public roads and highway crossings. - The reason of that requirement is, that at such open and public crossings there is no other way of preventing the ingress of animals to portions of the railroad not so crossed by the public, and required to be fenced. That reason can not obtain where a private crossing is enclosed by gates.

Upon the whole case our conclusion is, that upon the facts pleaded the railway company is not liable, and that, therefore, the court below erred in overruling appellant's demurrer to appellee's complaint.

The judgment is reversed, at appellee's costs, and the cause is remanded, with directions to the court below to sustain appellant's demurrer to the complaint.

Filed Oct. 12, 1887.