The Louisville, New Albany and Chicago Railway Company *v.* Hughes.

Filed June 12, 1891.

---

### No. 213.

## THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY *v.* HUGHES.

APPEAL.—*Theory of Case.*—The theory upon which a cause proceeded in the trial court should be the theory upon which the action of that court is tested on appeal.

RAILROAD.—*Injuries to Stock.*—*Pleading.*—In an action against a railroad company for killing stock, where the complaint alleges that the railroad was not fenced at the place where the animal entered upon it, it is not necessary that it be also alleged or shown that the railroad could properly have been fenced at such place. If it could not properly be fenced, this is a matter of defence.

SAME.—*Liability for Stock Killed.*—*How Affected by Act of April 8th, 1885.*—The act of April 8th, 1885 (Acts 1885, p. 148), providing for the construction and maintenance of farm crossings by the owners of tracts of land separated by a railroad, and the erection and maintenance of gates if the road is fenced, does not repeal the law rendering railroad companies liable for stock killed or injured by their cars where they do not securely fence in their railroads.

SAME.—*Fence.*—*Private Way.*—A private way across a railroad from a farm lying wholly on one side of the right of way to a highway on the opposite side of the right of way is not a farm crossing within the meaning of section 5 of the act of April 13th, 1885 (Acts 1885, p. 224), which

The Louisville, New Albany and Chicago Railway Company *v.* Hughes.

provides that "All gates and bars at farm crossings shall * * * be constructed and maintained and kept closed by the owner of such farm crossing."

SAME.—*Act of April 13th, 1885.*—Said act of April 13th, 1885, does not relieve a railroad company from liability for injury to animals which enter upon the track through a gateway to such private way, left open in a fence separating the railroad from a public highway.

From the Montgomery Circuit Court.

*R. C. Huston, E. C. Field* and *A. D. Thomas,* for appellant.

*H. M. Perry,* for appellee.

BLACK, J.—The appellee sued to recover for injury to his two cows, caused by their being run against by the appellant's locomotive and cars.

The complaint was in two paragraphs. In the first paragraph the appellee relied upon the alleged fact that the railroad was not securely fenced in where the stock entered upon it.

The assignment that the court erred in overruling the appellant's demurrer to the second paragraph of the complaint is pressed in argument. There are in this paragraph some allegations of negligence, and the appellant insists that it should be treated as a common law count for injury through negligence. If the pleading should be so construed, the objection urged by counsel, that there is no averment that there was no fault or negligence on the part of the appellee, would be well taken. It is said, however, by counsel for appellant, that the court based its ruling upon the ground that the second paragraph was good as a complaint in the statutory action based upon the failure to fence ; and upon an examination of the record it appears that the court, in its instructions, and in its rulings throughout the trial, treated both paragraphs of the complaint as based upon a failure to fence, and that the theory of the case, as tried and determined, did not involve the question of negligence. The theory upon which the cause proceeded in the trial court

should be the theory upon which the action of that court is tested on appeal.

It is also contended by counsel that the second paragraph is bad as a complaint based on failure to fence.   In this paragraph it is alleged, among other matters, that the appellant fenced along the west side of its railway, through a certain section of land in Montgomery county, and left a gap, or opening, twelve or fourteen feet wide in the fence, at a certain place, and "failed to notify the owner of the land opposite said opening, and for whose benefit said opening was left without any request by said owner of said land that said opening should be so left, that defendant had built said fence and had left said opening;" that on, etc., the cows passed through said opening in said fence, from a highway on the west, and abutting appellant's right of way, etc.

Concerning this portion of the complaint it is urged by counsel that if the railroad company was obliged to leave this opening, there was no need of a direct request from the landowner; also, that the pleading should have negatived a request of the tenant that the opening be left in the fence.

Appellant has assigned, also, as error, the overruling of its motion for a new trial, and it will be convenient to consider the questions which appellant seeks to present concerning the complaint in connection with the question as to the sufficiency of the evidence.

The railroad, running north and south, is crossed by a highway, on which the cattle came from the east, having escaped from an inclosure on the land of their owner, the appellee, a mile or two to the northeastward.   From the west side of this crossing a highway runs south along the west side of the appellant's right of way, and abutting upon it. Between the right of way and this highway a fence, constructed by the appellant, extended southward from said public crossing.   In constructing this fence appellant had left a gap of sufficient width for a gate for a wagon-way, at a point about one-half a mile south of said public crossing.

This gap, or gateway, had no gate, and was open at the time of the injury.

The animals were injured about midway between said public crossing and said opening in said fence.

From said public crossing, and extending southward, there was a fence along the east side of the right of way. At a point opposite said opening, this fence extended between the right of way and the west side of certain farmland owned by Mrs. Rich and Mrs. Elliott, and occupied by their brother, Captain James H. McClelland, who lived on land abutting on the east side of the railroad, and on said east and west highway, and who had occupied said land owned by his sisters for about eleven years, paying no rent therefor, but paying the taxes on the land, and having control of it for his said sisters, getting the land to use for keeping up the taxes. This fence on the east side of the railroad had been constructed by the appellant less than a year before the injury, but there had been a rail fence there before that time, and there had been a private way out from this land across the railroad to said opposite highway, which private way had been in use many years, during a part of which time there had been a gate there in said east fence, and a part of the time the gateway had been filled up with rails. When the appellant put up the new fence here it left a gateway therein, upon a written request delivered to appellant by said Mc-Clelland that a private crossing over and across said railroad be opened by the appellant for the sole use and accommodation of " the undersigned ; " the name of one of said land-owners, followed by " *et al.*," being added at the end of the writing.

Afterward, in constructing the fence on the west side of the railroad, appellant left said opening therein opposite said gateway on the east side, without any arrangement for a private crossing having been made, until after the fence on the west side had been put up, and said opening had been left therein, except the previous request for a private crossing

made when the east fence was constructed. But after the construction of the west fence, and the leaving of said opening therein, and before the injury to the stock, said McClelland signed, in like manner, a similar written request handed to him by an employee of the appellant. Said land-owners never requested said McClelland to have the openings left in the fences at said crossing, and he testified that he had no authority from the land-owners to make such request, but did it for his own convenience.

There were no cattle-guards, or wing-fences, at said public crossing. The first entrance of the cattle upon the railroad was not seen by any of the witnesses. It might have been found, upon the evidence, that they first entered at the public crossing. There was evidence introduced by the appellant, and not contradicted, that upon the approach of a train from the north, which passed an hour or two before the injury, which was done by a train from the south, the cattle ran out from the right of way through said opening in the west fence into said adjoining highway, and that they returned through said opening to the right of way.

In an action against a railroad company to recover damages for injuring or killing the plaintiff's animal by the defendant's locomotive and cars, the complaint alleging that the railroad was not fenced at the place where the animal entered upon it, it is not necessary that it be also alleged, or shown, that the railroad could properly have been fenced at such place. If it could not properly be fenced there, this is matter of defence, and the burden of proving it is on the defendant. *Louisville, etc., R. W. Co.* v. *Kious*, 82 Ind. 357; *Terre Haute, etc., R. R. Co.* v. *Penn*, 90 Ind. 284; *Louisville, etc., R. W. Co.* v. *Hall*, 93 Ind. 245; *Fort Wayne, etc., R. R. Co.* v. *Herbold*, 99 Ind. 91; *Evansville, etc., R. R. Co.* v. *Mosier*, 101 Ind. 597; *Cincinnati, etc., R. W. Co.* v. *Parker*, 109 Ind. 235; *Chicago, etc., R. R. Co.* v. *Modesitt*, 124 Ind. 212.

Under our law, as it was before the enactment of the stat-

utes of 1885 upon the subject of railroad fences and crossings, a railroad company in an action against it for the killing, or the injury, of a domestic animal, was held to be under the same liability for failure to keep a private crossing closed, as for failure to keep its track securely fenced in at any other place where it was proper to do so, where the question did not arise between the railroad company and a person for whose benefit the private crossing was maintained. *Wabash R. W. Co.* v. *Williamson*, 104 Ind. 154.

This was so held of a private way leading across the railroad from an adjoining public highway. *Indianapolis, etc., R. W. Co.* v. *Thomas*, 84 Ind. 194.

The act of April 8th, 1885 (Acts of 1885, p. 148) provided that " owners of tracts of land separated by the right of way of a railroad company may * * construct and maintain wagon and driveways over and across such right of way leading from one of such tracts to another on the opposite side of such right of way at any point most convenient to such owner," etc.; that " when such railroad is fenced on one or both sides at the point where such way is constructed such owner shall erect and maintain substantial gates in the line of such fence or fences across such way, and keep the same securely locked, when not in use by himself or employees;" and that " if animals are killed or injured on the track of such railroad by the cars or locomotives thereof, the company owning or operating such railroad, shall not be liable to pay damages therefor if such animal entered upon the track of such railroad through such gates, unless it shall be proved that such killing or injury was caused by the negligence of the servants of the company owning or operating such railroad."

This statute does not impose upon the railroad company the duty to fence in its track. It does not repeal the law rendering railroad companies liable for stock killed or injured by their locomotives and cars where they do not securely fence in their railroads and properly maintain the

fences.  It provides for the construction and maintenance of farm crossings, and, if the railroad be fenced, also for the erection and maintenance of substantial gates in the line of the fence, or fences, across such farm crossings.

The crossing in question, in the case at bar, was a passageway across the railroad from a farm which lay wholly on one side of the right of way to a highway on the opposite side of the right of way.  It is manifest that this statute of April 8th, 1885, does not apply to the case at bar.  It does not affect the question of the liability of the appellant for failure to maintain a secure fence on the west side of its right of way.

The act of April 13th, 1885 (Acts of 1885, p. 224), in the first section, requires railroad companies to construct and maintain fences, which may be constructed of barbed wire, on both sides of the railroad throughout the entire length, and to construct barriers and cattle-guards, and provides that where such fences and cattle-guards are not made, or are not kept in repair, the company shall be liable for all damage done by its agents, etc., to cattle, etc., " *Provided, however*, That such railroad corporation or other person operating the same, shall not be required to fence such railroad track through unimproved and uninclosed lands, and the provisions of this act shall not apply to such parts and portions of any such railroad which runs through unimproved and uninclosed lands, but when such lands become improved and inclosed on three sides the same shall apply, and such railroad corporation or person operating the same shall be required to fence the same under the provisions of this act within six months from the date of such inclosure."

The second section provides that if the railroad company neglect or refuse to construct such fence, barriers, or cattle-guards, as provided in the first section, the owner of any lands abutting on the land, or right of way, of the railroad shall have the right, after giving a prescribed notice, to construct such fences, barriers, or cattle-guards, as in the first

section provided for, so far as his lands abut on the land, or right of way, of such railroad, and to collect the value thereof from the railroad company.

Section 3 imposes on the railroad company the duty to keep such fence, barrier, and cattle-guard in repair, and provides that if it permit the same to get out of repair the owner of the land abutting on the land, or right of way, of the railroad, may give a prescribed notice, and if the company fail for a certain period to make or commence the repairs, such land-owner shall have the right to make them, and recover their reasonable value of the company.

Section 4 provides : " Nothing in this act contained shall in any manner affect or change the liability of railroad corporations, or of the assignees, lessees, or receivers of such corporations, for stock killed or injured upon their railroads ; but such liability shall exist and be governed by laws now in force the same as if this act had never been passed."

Section 5 is as follows: " All gates and bars at farm crossings, shall, in the absence of a contract or agreement to the contrary, be constructed and maintained and kept closed by the owner of such farm crossing."

The purpose of the first three sections of this statute, it would seem, was to provide to the owner of land abutting upon a railroad the right, with means of enforcing it, where his land is improved, and is inclosed on the other sides, to have it inclosed on the side bordering on the railroad at the expense of the railroad company. *Jeffersonville, etc., R. R. Co. v. Dunlap*, 112 Ind.93. The provisions of these sections would enable the owners of the land on the east side of appellant's railroad, at the place in question, to procure the construction and maintenance, by the appellant or at its expense, of a fence along the west side of said land, between said land and the railroad. But the construction of a fence on the west side of the railroad, between it and the highway, could not be enforced through the provisions of this statute by said owners of land on the east side of the

railroad, or by any other person. The obligation of the appellant for failure to build the west fence would be the indirect obligation of liability for stock killed or injured existing under the law in force before the enactments of 1885, and not repealed thereby.

Neither of these statutes of 1885 conferred on the owners of the land on the east side of the appellant's railroad a right to require the crossing in question, or an opening, or gateway, in the fence constructed on the west side of the railroad, and therefore such crossing and gateway could not be obtained without the consent of the appellant.

Leaving open an entrance to a railroad through a private way from a public highway is as much a failure to fence in the track as is a failure to provide cattle-guards and wing-fences, or barriers, at a public crossing.

It would seem that there is nothing in the legislation of 1885 to relieve the appellant from responsibility for leaving open the gateway in the west fence, unless such relief is afforded by section 5 of said act of April 13th, 1885. *Pennsylvania Co.* v. *Mitchell*, 124 Ind. 473 ; *Louisville, etc., R. W. Co.* v. *Shanklin*, 94 Ind. 297 ; *Wabash R. W. Co.* v. *Forshee*, 77 Ind. 158.

The legislation of 1885 here referred to has been construed to relieve a railroad company from responsibility, in the absence of negligence, for the injury or killing of animals which entered upon its track through a gateway at a farm crossing, whether constructed under the power given in the first section of said act of April 8th, 1885, or prior to or since the passage of said statutes of 1885, though constructed with the consent of the railroad company, or by it, and not by virtue of the power given by said first section, and though the animals were the property of a person other than the land-owner for whose benefit the crossing was maintained. *Hunt* v. *Lake Shore, etc., R. W. Co.*, 112 Ind. 69 ; *Pennsylvania Co.* v. *Spaulding*, 112 Ind. 47.

We think the crossing in question, in the case at bar, is

not such a crossing as is contemplated in these decisions, or in said section 5 of the act of April 13th, 1885.

There are many kinds of private ways. *Indianapolis, etc., R. W. Co.* v. *Thomas*, 84 Ind. 194 (196).

All private ways across railroad tracks, from adjoining farms, are not necessarily farm crossings within the meaning of the statute.

Said act of April 8th, and section 5 of said act of April 13th, both relate to the same species of crossing, a farm crossing.

In *Hunt* v. *Lake Shore, etc., R. W. Co.*, supra, it was said : " The statutes of 1885 enacted into a right, on the part of the land-owner whose land is separated by rights of way of railway companies, in certain cases, what was before a privilege voluntarily granted by such companies."

It was also said, that the purpose of the Legislature in the enactment of the statutes was to limit the liability of railway companies, as connected with farm crossings, as it was limited by the case of *Indianapolis, etc., R. R. Co.* v. *Adkins*, 23 Ind. 340, which, like *Hunt* v. *Lake Shore, etc., R. W. Co.*, supra, and *Pennsylvania Co.* v. *Spaulding*, supra, was a case relating to a crossing connecting parts of a farm separated by a railroad.

In *Wheeler* v. *Rochester R. R. Co.*, 12 Barb. 227 (232), in construing a statute imposing upon the railroad company the duty to erect and maintain " farm crossings of the road for the use of the proprietors of the lands adjoining such railroad," it was held that the object of that part of the statute was to enable the owner to enjoy the use of his lands by affording convenient means of access to parts severed by the construction of the road, and that it contemplated crossings upon the land taken between such several parcels ; not upon other lands to which such owner never had any right, whether near or remote.

The chief purposes of the legislation of 1885, in question, looked to the affording of relief to adjoining land-owners.

The prior legislation concerning the injury or killing of stock by railway companies, which was not repealed by that of 1885, was designed not only to provide for the compensation of the owners of animals injured or killed, but also to protect the public travelling in cars upon railroads. *Jeffersonville, etc., R. R. Co.* v. *Dunlap, supra,* and cases cited therein, on p. 98.  " It is apparent that every open crossing into the public highway across a railroad track increases, rather than diminishes, the danger of travel, by giving animals the opportunity to get upon the track in front of passing trains." *People* v. *Detroit, etc., R. W. Co.,* 79 Mich. 471.

It is not within the proper province of courts to create exceptions, or to interfere with the legislative policy relating to the liability of railroad companies for failure to fence their tracks. *Pittsburgh, etc., R. W. Co.* v. *Laufman,* 78 Ind. 319.

In section 4 of said act of April 13th, 1885, the liability of railroad companies for stock killed or injured upon their railroads, is emphatically declared to be the same as if said act had never been passed.

We are unable to conclude that in the enactment of said section 5 it was intended to relieve a railroad company from responsibility for leaving open a gateway in a fence dividing the railroad from a public highway, being an entrance to a private way across the railroad between a farm and such public highway. As between the railroad company and a person suing it for injury to his animals which entered upon the track from a public road through such a gateway, he not standing in the relation to the company of a land-owner for whose benefit such opening was left, we think that said section five should be regarded as inapplicable.

The verdict against the appellant being right upon the evidence, we need not examine the instructions.

The judgment is affirmed, with costs.

Filed June 13, 1891.