C. & A. R. R. Co. v. Sanders.

# The Chicago & Alton Railroad Co. v. Turner S. Sanders.

1. NEGLIGENCE AND DUE CARE—*Approaching Railroad Crossings.*— Due care does not require a person approaching a railroad crossing to be looking constantly in any particular direction for approaching trains.

2. SAME—*Duty of Engineers and Firemen on Moving Trains.*—The law does not require the engineer and firemen upon moving trains to keep a continuous lookout in front of the engine or to the sides thereof. It is their duty to see to the proper operation and condition of the locomotive.

3. TRESPASSER—*Who is Not, upon Railroad Grounds.*—A person in the employ of the owner of a farm upon which there is a private farm crossing over a railroad track, is not a trespasser upon the company's right of way, while passing over the crossing in the exercise of his employment.

4. ORDINARY CARE—*What is, in a Given Case.*—What is ordinary care in a given case is to be determined by the circumstances of such case as a question of fact for a jury.

5. RAILROAD COMPANY—*Duty at Private Crossings.*—While the statute does not expressly require a railroad company to give notice upon approaching a private crossing, it does not follow that the circumstances of a particular occasion might not. Reasonable notice of the approach of a train should be given at all points of known or reasonably apprehended danger.

6. INSTRUCTIONS—*Assuming Facts.*—The assumption of a fact in an instruction not proven, nor aided by a legal presumption, is error.

**Memorandum.**—Action for personal injuries. In the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Declaration in trespass; pleas, not guilty; trial by jury; verdict and judgment for plaintiff. Heard in this court at the November term, 1893, and affirmed. Opinion filed April 28, 1894.

APPELLANT'S BRIEF, GREEN & HUMPHREY AND WILLIAM BROWN, ATTORNEYS.

Trains do not have to slacken their speed approaching farm crossings. Toledo W. & W. Ry. Co. v. Miller, 76 Ill. 278. It makes no difference that a team is seen approaching a railroad. Chicago, B. & Q. v. Harwood, 80 Ill. 88; Chicago & A. R. Co. v. Robinson, 9 Ill. App. 89. The en-

gineer may assume that the driver will wait. Chicago & A. R. Co. v. Lee, 68 Ill. 576; W., St. L. & P. R. Co. v. Knight, 13 Ill. App. 431; St. Louis, A., etc., R. Co. v. Manley, 58 Ill. 300; Toledo, W. & W. R. Co. v. Jones, 76 Ill. 311; Chicago B. & Q. R. Co. v. Damerell, 81 Ill. 450; W., St. L. & P. R. Co. v. Neikirk, 15 Ill. App. 172; St. Louis, V. & T. II. v. Hurst, 25 Ill. App. 181; Chicago, B. & Q. R. Co. v. Florens, 32 Ill. App. 365. The traveler has the greater control and should stop. Toledo, W. & W. R. Co. v. Jones, 76 Ill. 311; I. & St. L. v. Willisch, 8 Ill. App. 242.

APPELLEE'S BRIEF, McGUIRE & SALZENSTEIN, ATTORNEYS.

One rightfully using a private crossing is not a trespasser, to whom the railroad owes no special duty, but he has the same right to use it as the general public have to use a public crossing. The railroad owes him the duty of using due and proper care and caution to prevent injury to his person and property. Thornton on Railroad Fences and Private Crossings, sections 291, 292; White v. Concord R. R., 10 Fort. (N. H.) 188; Thomas v. Delaware, L. & W. Co., 8 Fed. Rep. 730; Continental Improvement Co. v. Stead, 95 U. S. 161; Cordell v. N. Y., Chicago, R. Co., 70 N. Y. 119; L. S. & M. S. Ry. Co. v. Bodemer, 139 Ill. 596; Bender v. Can. So. R. W. Co., 37 Q. B. (Upp. Can.) 25.

A railroad company must run its trains at such speed and do such other acts as reasonable care and precaution would require under the circumstances, whether those acts are required of it by statute or not. Chicago & A. R. R. Co. v. Engle, 84 Ill. 397; Chicago & A. R. R. Co. v. Dillon, 123 Ill. 57; Chicago, B. & Q. R. R. Co. v. Perkins, 125 Ill. 131; Chicago & I. R. R. Co. v. Dane, 130 Ill. 116.

If there is any conflict or uncertainty in the evidence either as to the due care of appellee or negligence of defendant, it is a question of fact to be determined by the jury from the facts and circumstances in evidence. Toledo H. R. R. Co. v. Voelker, 129 Ill. 540; Illinois Cent. R. R. Co. v. Slater, Id. 91; Chicago & N. W. R. R. Co. v. Dunleavy, Id. 132; Chicago & A. R. Co. v. Adler, Id. 335; Chicago & I.

R. R. Co. v. Lane, 130 Ill. 216; Chicago, M. & St. Paul R. R. Co. v. Wilson, 133 Ill. 55; City of Chicago v. McLean, Id. 148; Lake Shore R. R. Co. v. Johnson, 135 Ill. 64; Illinois C. R. R. Co. v. Slater, 139 Ill. 190.

Mr. Justice Pleasants delivered the opinion of the Court.

For personal injuries by a train of appellant going south on the 30th of August, 1892, at the private crossing of Jethro Bunker, near the village of Chatham, appellee got a verdict for $2,750, which the court refused to set aside. Appellant seeks a reversal of the judgment thereon, upon the claim that the verdict was not supported by the evidence, and that the court erred in the matter of instructions to the jury.

The track runs a little east of north and west of south across the farm, leaving about forty acres with the buildings on the west side and two hundred on the east. From its center to the west gate of the crossing the distance is thirty-three feet and to the east gate thirty. Along the east line of the right of way and within it, from a point about two hundred feet north of the crossing, were large bushes, twelve to fifteen feet high and extending north one hundred and twenty feet to a large cottonwood tree standing just outside the fence, but whose west limbs and branches hung over it toward the track, and from the tree north was a hedge twelve or fifteen feet high, all in full foliage. At the east gate and for a short distance east about forty feet, we infer from the testimony, the land is considerably lower than the railroad track, and then rises to the general level east and west.

At the time of the collision appellee was in the employ of Bunker, hauling manure from the barn to a stubble field on the east side. Having emptied a load at a point about an eighth of a mile east of the track he started back, west, on a road running east and west and making an angle with the track on the north something less than a right angle. He drove a heavy team in a moderate walk. Standing in

his wagon box, as he was, and looking west, his view, so far
from the crossing, would take in a considerable distance
both ways from it. He says there was no complete obstruc-
tion to his sight of a train north of the cottonwood tree until
he came within forty feet of the gate, into the depression
spoken of. From that point until he passed the gate he
could not see one anywhere north of the south end of the
bushes—two hundred feet north of the crossing—because of
the depression, the cottonwood tree and the bushes; that
from the time he started on his return he was constantly
looking for trains, alternately north and south, but mostly
south—that being the direction in which his view was most
obstructed and from which he had most reason, at that time
of the day, to expect one,—but saw none, nor heard any
signal or sound of its approach. It seems probable that the
train from the north was not in fact within sight from any
point on his road before he reached the depression; for had
there been no obstruction by the tree or bushes it could not
have been seen more than half a mile north of the crossing,
and those obstructions hid it, sooner than they otherwise
would, because of the angle at which the road approached
the track. There he could have seen it only as far as the
opening of two hundred feet from the crossing would per-
mit. He swears that he then looked, and neither seeing nor
hearing any, went on. When he reached the gate his horses'
heads must have been within twenty feet of the track. His
own was eight or nine feet above the ground, and his view
might have been still obstructed by the bushes branching
westward, until the train was at or very near their south
end and his horses' feet at or very near the east rail. He
swears he looked north again after he passed the gate, but
when he got west of the bushes and first saw the train, it
was only about fifty feet from him, and his horses were on
the track. Then he instinctively slapped them with the
lines, but too late. He frankly admitted that he could not
account for his failure to see it at least as soon as it reached
the south end of the line of bushes; but the jury may have
found a satisfactory explanation in the facts, if they found

them to be facts, that he had been looking for trains north and south all the way, and so looked just before he reached the gate, at it and after he passed it, and the probability that during the almost inappreciable time it was making the one hundred and fifty feet or more he was looking south, and for the reasons above stated. Due care did not require him to be looking constantly to the north.

Appellant asked and the court properly gave an instruction that neither the engineer nor fireman is required to keep a continuous lookout in front of the engine or to the sides thereof, because it is their duty to see to the proper operation and condition of the engine with reference to the state of water, fuel and steam; and the jury would have been justified in concluding, for a like reason, that appellee was not required to keep a continuous lookout to the north, because he had to attend to his team and the road, and also to look to the south. Had he been struck by a train from the south while he was looking for one from the north, the charge of negligence on his part would have been no less and no more reasonable than as here made. Several witnesses on his side and the other, testified that they noticed him as he drove along, and that when they did he appeared to be looking south, but none that his observation was constant enough to warrant the statement that he did not at other times look north, as he swears he did. They corroborate him as far as they go and show he was not thoughtless of his danger or careless for his safety.

Other circumstances in proof also tend to excuse the failure he admitted. The collision occurred about 1:30 P. M., a time when no regular train from the north was due; the train was a wild one; it consisted of only an engine, tender and caboose; the trip was the first made by the engine after extensive repairs, and it was on trial to show how fast it would run and how smoothly it would work; the rate of its speed was very high; the track was in fine condition every way; steam had been shut off, the village limits being only a quarter of a mile south; its motion was comparatively noiseless; there was a strong wind against it, and no signal sound of its coming was given.

These circumstances were sufficient to make it a fair question for the jury, whether the appellee had not done all, as to looking north and otherwise, that any man no more than ordinarily prudent and careful, would do or be expected to do in the like, and also whether the servants of appellant in charge of the train did or did not fail to use such care on their part to avoid the injury here complained of.

For it is well settled law that appellee was not a trespasser upon appellant's right of way, to whom it owed no such duty. He was on his master's crossing, and lawfully so in his master's right, for its proper use, subject to the correlative right of appellant in the proper use of its track and trains thereon, just as appellant was there, subject to his. It was therefore charged with the duty of exercising reasonable or ordinary care for his protection in such use of it against injury by its trains, or servants in the management of them. What is such care in a given case is to be determined by its circumstances as a question of fact for the jury. D., L. & W. Ry. Co. v. Converse, 139 U. S. 499.

This crossing had been long established and the track so cut the farm as to make its use necessarily frequent. Appellant therefore had notice that it might be in use at any time of a working day, especially as against a wild train. From the fact that the statute did not expressly require it to whistle or ring for a private crossing as it did for a public highway, it would not follow that the circumstances of a particular occasion might not. Notwithstanding the statute, reasonable notice of the approach of a train should be given at all points of known or reasonably apprehended danger, and the means by which it is usually given are the bell, the whistle or the flagman. C. & A. R. R. Co. v. Dillon, 123 Ill. 570; C., B. & Q. R. R. Co. v. Perkins, 125 Id. 127 (131); Thomas v. D., L. & W. Ry. Co., 8 Fed. Repr. 73.

So, too, the fact that the cottonwood tree was outside of the right of way as fenced would not excuse appellant for failing to regard it as an actual, though natural, obstruction, if it was such, to the view of a train from the north by persons approaching the crossing from the east or of such per-

sons by those in charge of the train. In such case it is for the jury to find whether it should approach the crossing at a less rate of speed and use increased diligence to give warning. Continental Improvement Co. v. Stead, 95 U. S. 161; Cordell v. N. Y. C. R. R. Co., 70 N. Y. 119.

We have considered the opposing evidence, but deem it unnecessary to notice it particularly, because we are satisfied that the foregoing sufficiently shows it was a case for the jury. The court, therefore, could not properly have refused the first instruction given for plaintiff.

The eleventh as asked by appellant ignored the duty of the engineer to use reasonable diligence to know whether there was danger, and the modification only supplied the defect as recognized by those numbered 7 and 10.

The twelfth asked assumed that " a reasonable lookout " by appellee would have discovered his danger in time to avoid it; whether it would or not was one of the issues. The assumption was not aided by any presumption that the engineer could properly entertain. I. C. R. R. Co. v. Slator, 139 Ill. 199. There was therefore no error in its refusal.

We think the thirteenth was misleading. If it be true as a general abstract proposition, that the law does not require a railroad company to prevent bushes or grass from growing upon its right of way so as to obstruct the view of persons using a private crossing, as is therein stated, the running at a high rate of speed without warning such persons may be negligent in connection with, and by reason of such obstruction, when it would not otherwise. That was the point attempted to be made by the proof, and, as we think, intended by the averment in the declaration. The case alleged and proved, if any was proved, was the conduct and management of the train, the running at such speed and without warning, under the circumstances, including the obstruction permitted by appellant. The tendency of the instruction was to withdraw that circumstance entirely, for all purposes, from the consideration of the jury, and was for that reason rightly refused. A majority of the court are of opinion that there is no sufficient ground for reversing the judgment, and it will be affirmed.