## Gordon O. Williams v. Chicago & Northwestern Railway Company.

### Gen. No. 4,726.

1. FARM CROSSING—*defined.*  A farm crossing is a crossing used in connection with land employed for agricultural purposes.

2. RAILROADS—*when not liable to construct crossing.*  A railroad company is not required to construct a crossing which does not pertain to a street or alley, and which is not a crossing used in connection with land employed for agricultural purposes.

Action commenced before justice of the peace.  Appeal from the Circuit Court of Winnebago county; the Hon. ARTHUR H. FROST, Judge, presiding.  Heard in this court at the October term, 1906. Affirmed.  Opinion filed March 13, 1907.

FISHER and NORTH, for appellant.

STANTON A. HYER, for appellee; S. A. LYNDE, of counsel.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Appellant owns a strip of land in the city of Rockford between the right of way of appellee next east thereof and Rock river which bounds its westerly side. It is about 550 feet long, and begins at a point at the northerly end and is about seventy-five feet wide at the southerly end.  This piece had not been subdivided into lots or blocks.  That part of the city lying east of the railroad right of way has been subdivided. Blocks one and two of a certain subdivision lie immediately east of the right of way at this point, and between these blocks is an alley sixteen feet wide, which comes to and ends at the east side of the right of way.  That alley runs easterly from the right of way to a street which passes in front of said blocks one and two.  Between said street and the east side of the right of way and northeasterly from said alley factories were located, and switch tracks from appellee's

Williams v. Chicago & N.-W. Ry. Co.

railroad, which switch tracks crossed said alley. No street or alley reaches appellant's strip of land, and he has no outlet by any public way. Before appellant bought this strip, and as far back as 1889, there was a crossing at the westerly end of the alley, by which access was had to boiler works then located on this land. After appellant bought the land it lay idle for several years, and the plank crossing at the end of the alley became rotten, and appellee took it out. Afterwards appellant rented his land for a term of years, and the tenant erected an ice house thereon and stored ice therein. Dirt was filled in between the rails and the tenant hauled small loads across at that place, and was still doing so at the time of the trial of this case in the Circuit Court. But the tenant wishes to haul loads of seven thousand pounds on wagons weighing a ton and a half, and finds it difficult or impossible to go over the track with such a load. Section 1 of the act of 1874 in relation to fencing and operating railroads, as amended in 1879, requires railroad corporations to erect and maintain fences on both sides of its road, except at the crossings of highways and within such portions of cities, incorporated towns and villages, as are platted into lots and blocks, with gates or bars at the farm crossings of such railroads, "which farm crossings shall be constructed by such corporation when and where the same may become necessary, for the use of the proprietor of the lands adjoining such railroad." Section 3 provides that whenever a railroad corporation shall neglect or refuse to build or repair such fence, gates, bars or farm crossings, the owner or occupant of the lands adjoining such railroad may give notice in writing to such corporation to build such fence, gates, bars or farm crossings within thirty days, or to repair them within ten days. Section 4 enacts that if the party so notified shall refuse to build or repair the same the owner or occupant of the land may build or repair such fence, gates, bars or farm crossings and shall be entitled to recover double

value thereof, with interest at one per cent. per month as damages from the time the same was built or repaired. In reliance upon this statute appellant, on November 8, 1905, served written notice upon appellee that the crossing over its railroad track and right of way at the westerly end of said alley was out of repair, and that appellee should repair the same and place it in reasonably good condition for crossing with teams and wagons within ten days. After waiting ten days appellant built the crossing, filling up embankments to the tracks and planking the tracks. Appellee took out the planks. Appellant replaced them. Appellee again removed them. Appellant replaced them again. Appellee removed them a third time. Appellant then brought this action to recover double the value of the improvements he had so made. Appellant recovered before a justice, but on the trial of an appeal in the Circuit Court, the court, at the close of appellant's proof, directed a verdict for appellee, denied a motion for a new trial, and gave judgment against appellant, from which he prosecutes this appeal.

It is clear that the business carried on upon appellant's land needs an outlet to the public street. It may be that the city ought to open a street or alley to it by condemnation. But in such case appellee would be entitled to at least nominal compensation, and would not be liable for double the cost of the improvement. It may be that facts exist which would entitle appellant to a way by express or implied contract or covenant. But such contract could not be enforced in this action to recover double the value of the improvements. The sole question here is whether he is entitled to have a farm crossing maintained under the statute above referred to, in which case only he can enforce its penalty for failure to build or repair. In People v. Caldwell, 142 Ill. 434, 441, a farm is defined as "a body of land, usually under one ownership, devoted to agriculture, either to the raising of crops or pasture, or both." Webster defines a farm as "an extended piece of

ground, devoted by its owner to agriculture." And-
erson's Law Dictionary defines it as "land devoted to
purposes of agriculture." Farm crossings have been
the subject of direct or indirect discussion by the
supreme and appellate courts of this state in many
cases, among which are C. & N. W. R. R. Co. v. Harris,
54 Ill. 528; P. P. & J. R. R. Co. v. Barton, 80 Ill. 72;
Chalcraft v. L. E. & St. L. R. R. Co., 113 Ill. 86; I. C.
R. R. Co. v. Willinborg, 117 Ill. 203; C. & A. R. R. Co.
v. Sanders, 154 Ill. 531; B. & O. S. W. Ry. Co. v. Keck,
185 Ill. 400; L. E. & St. L. Ry. Co. v. Chalcraft, 14 Ill.
App. 516; T. H. & I. R. R. Co. v. Elam, 20 Ill. App. 603;
A. T. & S. F. R. R. Co. v. Parsons, 42 Ill. App. 93; C.
M. & N. R. R. Co. v. Eichman, 47 Ill. App. 156; C. & A.
R. R. Co. v. Sanders, 55 Ill. App. 87; and B. & O. S. W.
Ry. Co. v. Keck, 84 Ill. App. 159. In all these cases
the crossing had been put in for the benefit or use of a
farm, in the ordinary acceptation of that term. Our
attention has not been called to any Illinois case where
a farm crossing has been discussed in any other con-
nection than with relation to land used for purposes of
agriculture.

There is no proof that this strip of shore land along
Rock river has never been farmed or used for agri-
cultural purposes. Before appellant bought it boiler
works had been operated there. Clearly that business
did not entitle the owner of the land to a "farm cross-
ing," and so far as this record shows the use of a
crossing at this place then must have been under a
mere license, and therefore revocable at will. Appel-
lant did not drive wagons and teams across there for
several years after he bought the land, but use of the
crossing was abandoned and appellee removed the
planks. Boats landed at points along this shore after
appellant bought it, and people went there to bathe in
the river, but they had no relation to appellant, and it
is not shown that they used this crossing. We have no
doubt that the farm crossings required by this statute
were intended for the benefit of agricultural lands.

From the time that legislation on this subject was first enacted in this state down to 1879, so far as we are advised, the provision requiring the fencing of railroads was confined to territory outside of incorporated towns, cities and villages; and the provision in the first of such statutes, requiring "openings, gates or bars at the farm crossings of such railroad, for the use of the proprietors of the lands adjoining such railroad," obviously referring to land lying outside of cities and villages, and at that time such land was practically all farm land. Appellant seems to concede this, but argues that he is entitled to a crossing under the amendment of 1879. That amendment so changed section 1 as to require the right of way to be fenced within such parts of cities and incorporated towns and villages as are not laid out and platted into lots and blocks; but it did not change the provision concerning farm crossings. If the legislature had intended by the original act to provide for crossings for business purposes in cities and villages it would not have adopted the term "farm crossings," which by its natural meaning restricts the provision to farms, but would have used some such term as "private crossings;" and if the legislature in 1879 intended that thereafter private crossings for business purposes should be provided in such parts of cities and villages as are not laid out and platted into lots and blocks, surely, while amending the section, it would have dropped the word "farm," and would have substituted some language fitted to express the intended change. The retention of the term "farm crossings" in the amended section indicates that the private crossing therein provided for was still to be a crossing for the use of those who own or occupy farm lands. It may be that it would be wise and just for the legislature to provide for private crossings to factories, ice houses and other business places within cities which have no outlet to a public way. But it would be judicial legislation for the courts to so construe this statute as to

eliminate the qualifying word "farm" from the term "farm crossing" therein. We do not feel authorized to hold that this statute entitles a landowner to a crossing where there is no farm and where the land is not used for agricultural purposes. The only case we have found which seems to indicate any relaxation from this interpretation of the term "farm crossings" is B. S. & C. Co. v. D. L. & W. R. R. Co., 130 N. Y. 152. There the land was within the limits of the city of Buffalo, but still it was a farm. The statute, like ours, required "farm crossings." At the time the controversy arose the land was used for agricultural purposes, and portions of it also for quarries, and the railroad company contended that it was error to order a crossing constructed for any except agricultural uses. The court said: "The statute does not limit the right of adjoining owners to crossings solely for agricultural purposes, but they may be ordered to enable owners to remove the natural products off the land, like stone and minerals." If appellant had proved that he owned to the center of the river, and that the ice in the building on this shore strip of land was cut over his land in the river, a question might have been raised whether the qualification suggested in the case last cited ought to be followed in this state, and if so, whether it could be said that such ice was the natural product of the land. But appellant expressly testified (record p. 23): "The property that I own is a narrow strip of land between the river and the railroad right of way;" and also that his tract of land was about 550 feet long, running to a point at the north end and about seventy-five feet wide at the south end. Under this proof we cannot assume that he owned the bed of the river. There was no proof where the ice was cut which is stored in the ice house on this strip of land. The case was not tried upon any such theory. Besides the crossing ordered in the New York case was needed for purely agricultural purposes—for the use of that part of the land which was tilled as a

farm—and the court, in ordering a farm crossing for the use of the proprietor of such land, manifestly would not forbid his also hauling over the crossing stone taken from another part of the same land. In Wheeler v. R. & S. R. R. Co., 12 Barb. (N. Y.) 227, a statute requiring "farm crossings" was said to be "intended to secure to the farmer the crossing most convenient to him in the reasonable and customary use and occupation of his premises." The term "farm crossings" was treated as of like meaning in L. N. A. & C. Ry. Co. v. Hughes, 2 Ind. App. 68, and 28 N. E. Rep. 158.

We conclude appellant was not entitled to a statutory farm crossing at the end of said alley, and therefore was not entitled to recover double the value of the improvements he put in, and therefore the court properly directed a verdict for defendant.

The judgment is therefore affirmed.

*Affirmed.*