Robert Bauer, Appellee, v. Elgin, Joliet and Eastern Railway Company, Appellant.

Gen. No. 10,593.

Opinion filed July 3, 1952.

Released for publication July 28, 1952.

KNAPP, CUSHING, HERSHBERGER & STEVENSON, of Chicago, and PUTNAM, JOHNSON & ALSCHULER, of Aurora, for appellant; HARLAN L. HACKBERT, of Chicago, of counsel.

ELLIS, HAMILTON & GEISTER, of Elgin, for appellee; WALTER W. GEISTER, JR., and PAUL M. HAMILTON, both of Elgin, of counsel.

MR. JUSTICE WOLFE delivered the opinion of the court.

Robert Bauer procured a judgment against the Elgin, Joliet and Eastern Railway Company for $952 for three cows which had been killed by a train of the defendant on a private railroad crossing of the defendant. The defendant entered a motion for judgment notwithstanding the verdict and in the alternative for a new trial. These motions were denied by the court and an appeal has been perfected to this court to reverse the judgment.

On August 26, 1949, the defendant owned and operated a railroad that passed through Kane county, Illinois. The plaintiff owned a one hundred and thirty-acre dairy farm in said county near Elgin, Illinois. The farm lay on both sides of the defendant's right of way, which ran northerly and southerly separating eighty acres of pasture land to the east from the buildings and remaining fifty acres west of the track. A private farm crossing, with gates in each right-of-way fence, extended across the railroad right of way about four hundred feet south of an overhead viaduct. Just under the viaduct the tracks curve to the southeast. On August 20, 1949, at about five o'clock in the evening, Robert Bauer and a young man named Richard Pierce, who had been employed by him had finished filling a silo and the two went across the track and opened the gates to drive the cattle from the pasture land on the east

543

side of the track to the buildings on the west side, and while they were doing so, the freight train of seventy-three cars came from the north and struck and killed three of the plaintiff's cows. Before letting the cows out of the pasture, Bauer sent Richard Pierce up north of the crossing to take a look at the signal lights to see whether a train was coming. The boy reported that the light was green and no train approaching. They then opened the pasture gate and started the cattle across the track. Before they could get them across, the train came from the north and struck and killed three of the cows. The train was a regular freight train that passed the premises of the plaintiff every day at practically the same time. Just before the train reached the viaduct, the whistle was sounded and immediately after the train crew discovered the cattle on the crossing, they tried to stop the train, but could not do so until after it had struck the cattle.

The negligence with which the defendant is charged in the complaint is, "that the defendant then and there owed a duty to the plaintiff to use reasonable and ordinary care and caution in the operation of its trains for the safety of the said cows; notwithstanding this duty owed to the plaintiff, the defendant, by one of its servants, then and there, operated a south bound freight train in a negligent manner and at a high and dangerous rate of speed, and without giving a proper warning signal or without maintaining a proper lookout of said cows, struck and killed three of them." Plaintiff also charged that he was at all times in the exercise of due care for the safety of the cows, and that the death of the cows was caused solely by the negligence of the railway company.

There is little dispute in regard to the evidence in this case; that the whistle was sounded just before, or at the time the train reached the viaduct is uncontradicted. The railroad track curves slightly to the south-

east after leaving the viaduct. There are high banks on both sides of the railroad shortly south of the viaduct. Plaintiff's Exhibits No. 1 and 2, photographs of the track and viaduct, show clearly that a train could be seen from the crossing in question before it reached the viaduct. As a train would come under the viaduct from the north, the engineer would be on the right side of the cab, and his opportunity of observing any obstruction on a crossing would not be as good as the brakeman on the left side. The testimony is that as the train came under the viaduct the brakeman saw the cattle and called to the engineer "cattle on the track," and that the engineer immediately put on the brakes and tried to stop the train before it hit the cattle, but could not do so. The undisputed evidence is, that the train was travelling at a rate of speed of between thirty and forty miles per hour.

The plaintiff in his testimony said that he knew that this train was on a more or less definite schedule; that he always watched it pretty closely and looked at the light, because it did come through pretty nearly on schedule. He further said he knew the train usually came along about this time in the afternoon, referring to the time of the accident. He had been working outside all afternoon and he had not seen the train; that he didn't pay much attention to it; that it ordinarily came along at a pretty good rate of speed; that he knew this at the time he went to get his cows on this particular afternoon.

 In the case of *Chicago & N. W. Ry. Co. v. Bunker,* 81 Ill. App. 616 (decided by the court), the facts with the exception of the names and date are identical. In this case we use this language: "Whatever may have formerly been the rule in this State, it is not now the duty of railroad companies to anticipate the presence of cattle or stock upon their tracks and be on the constant watch to discover them, but the

duty to avoid injury arises only after discovery of their presence. If, after the servants of the company see animals upon the track, they can, by exercise of due and proper care, avoid doing them injury, and fail to do so, the company will be liable.''

In the case of *Toledo, W. & W. R. Co. v. Miller,* 76 Ill. 278, a boy was killed while riding in a wagon at a railroad crossing and suit was started by the next of kin for damage against the railroad company. The train in question was behind time, but was not being run at an unusual rate of speed. The Supreme Court in passing upon the obligation of the railroad company to use due care in the operation of its trains uses this language: ''No obligation rested upon them to slacken the speed of the train before reaching a crossing in the country, like this one, where persons seldom pass. Neither the law nor the public safety has demanded any such precautionary measures. But a different duty would be imposed in crossing a street or highway in a city or village where persons are constantly passing and repassing.''

The appellees rely strongly upon the case of *Chicago & A. R. Co. v. Sanders,* 154 Ill. 531, but the factual situation was entirely different from the one in the present case. The case was originally appealed to the Appellate Court (55 Ill. App. 87) and the facts as there stated, are as follows: ''The collision occurred about 1:30 P. M., a time when no regular train from the north was due; the train was a wild one; it consisted of only an engine, tender and caboose; the trip was the first made by the engine after extensive repairs, and it was on trial to show how fast it would run and how smoothly it would work; the rate of its speed was very high; the track was in fine condition every way; steam had been shut off, the village limits being only a quarter of a mile south; its motion was comparatively noiseless; there was a strong wind against

546

it, and no signal sound of its coming was given." The Appellate Court having found these facts to be true, the Supreme Court then in passing upon the case would also assume them to be true, and their opinion then necessarily would be based upon the facts as above stated. This case then seems to us to have very little bearing upon the facts as are developed in this case that we are now considering.

██ As before stated, the negligence charged against the defendant was, it operated its train in a negligent manner at a high and dangerous rate of speed, and without giving a proper warning signal, or without maintaining a proper lookout for the cows. The evidence is uncontradicted that the crossing in question could not be seen by the railroad employees, until it was at or near the viaduct. Just before that time a long blast of the whistle was sounded for a station further south of the crossing; that as soon as the crossing came in sight, the brakeman saw the cattle and notified the engineer and he immediately tried to stop the train.

It is our conclusion that the plaintiff failed.to prove the negligence as charged in the complaint. While we realize that these questions are usually for the jury to decide, but by the facts disclosed in the record of this case, we feel that the judgment should be reversed.

*Judgment reversed.*