## The Toledo, Peoria and Warsaw Railway Co.

*v.*

### Robert Pence.

1. Negligence—*neglect to fence road by railway company.* Where a railway company kills stock with its train not at a public crossing or other place where it is required to fence its track, and has been in operation for more than six months prior to the accident, and has not fenced its track at the place where the killing took place, and the owner of the land has not agreed to fence the road, the company will be liable to the owner of such stock, under the act of 1855, without proof of any actual negligence, even though the owner may not prove the stock got upon the track at the point not fenced.

2. The design of the act of 1855, on this subject, was, to afford some protection from hazard of trains running at a high rate of speed, by fencing, and if this is omitted by a railroad company, it will be presumed to be guilty of negligence, without any other proof than of the omission to fence.

3. Same—*burden of proof as to exceptions not in enacting clause of the statute.* In a suit to fix the liability of a railroad company for killing stock, on the ground of a neglect to fence its track, if the land-owner has received a specific sum for fencing along the line, or had agreed to build and maintain a lawful fence, or had received compensation for so doing by way of damages in the condemnation of the land, the burden rests upon the company to show such fact in defense, and not upon the plaintiff to negative it.

4. Same—*effect of act of 1869 on company's liability.* The act of 1869, giving the land-owner the right to build a fence along the railroad track over his premises, and hold the company liable therefor, upon its failure to fence on notice, does not release railroad companies from their liability,

under the act of 1855, for stock killed. The later act creates no duty upon the land-owner to fence, but merely gives him the privilege to do so, and the fence, when so built by the owner of the land, will be the property of the company.

5. Railroad—*in what sense public highway.* Railroads are public highways, not in the sense of public wagon roads, upon which every one may transact his own business with his own means of conveyance, but only in the sense of being compelled to accept of each and all, and take and carry to the extent of their ability.

6. Same—*effect of new constitution on right of way.* The constitutional provision providing that the fee to lands taken for right of way shall not pass, but remain in the land-owner, has no application to proceedings completed before the adoption of the constitution, and the duty of railway companies to fence their track is not affected by the fact whether they own the fee or have only an easement in their right of way.

7. Pleading—*negativing exceptions in statute.* Where the clause of a statute creating a liability contains exceptions, the party seeking to enforce such liability must show affirmatively that the case does not fall within any of the exceptions; but when exceptions are made in a separate section, it is the business of the party sought to be charged to set up and prove the facts exempting him from liability.

Appeal from the Circuit Court of Henderson county ; the Hon. Arthur A. Smith, Judge, presiding.

Messrs. Ingersoll, Puterbaugh Bros. & McCune, for the appellants.

Mr. John J. Glenn, for the appellee.

Mr. Chief Justice Breese delivered the opinion of the Court:

This was an action, originally brought before a justice of the peace in Henderson county, by Robert Pence against The Toledo, Peoria and Warsaw Railway Company, to recover the value of a heifer belonging to the plaintiff, and killed by defendants' train of cars moving upon their road.

The action was brought under the act of March 25, 1869, extending the jurisdiction of justices of the peace and police magistrates, and on the allegation of neglect and failure on

the part of the railway company to fence their track at the place where the injury occurred, the railway having been opened for use more than six months prior thereto.

The plaintiff recovered a judgment for twenty-five dollars, from which the defendants appealed to the circuit court, where a like judgment was recovered.

To reverse this judgment the defendants appeal, and assign as error the refusal of the court to give this instruction :

"Before the jury can find for the plaintiff, they must first find, from the evidence, that the injury to or the killing of the said heifer was occasioned by negligence on the part of the defendant or its employees."

On this instruction a labored argument is presented by appellants, to establish the proposition that the act of 1855, requiring railroads to fence their track, is no longer in force in this State. No actual negligence was proved against appellants, the case resting upon the presumption of negligence, arising from a failure to erect a fence as required by that act.

The proof was, the killing occurred on appellants' track, in August, 1872 ; that the road was not fenced at the place of killing ; that it had been in operation and used more than six months prior to the killing ; that it did not occur at a public crossing, nor within the limits of a city, town or village ; that it was within five miles of a settlement; and that the owner of the land had not agreed to fence the road.

There being no declaration filed in the cause, the character of plaintiff's claim can only be ascertained from the testimony. From the facts established thereby, and from the facts above stated, we can come to no other conclusion, than that the right to recover was placed on the failure of the company to comply with the provisions of the act of 1855, which failure is ground of recovery without proof of actual negligence. But it is insisted by appellants that appellee's proof did not bring him within the provisions of the act of 1855, when considered in connection with the act of 1869. What are the provisions

of the last named act ? They simply permit the land-owner to construct the fence in case the company fails so to do after a notice of sixty days, and recover the value thereof of the company, with interest at one per cent per month, from the time of building the fence, together with costs, fees and disbursements to be taxed. Sess. Laws 1869, p. 315.

We are unable to perceive in what particular this act relieves railroad companies from their liability imposed by the act of 1855, nor do we understand that a party suing under that act is required to show he occupies the position of a proprietor of the land where the fence should have been erected. The doctrine of this court has uniformly been, since the passage of that act, that if the species of stock described in the act are killed upon a railroad, at a place thereon which, by the act, should be fenced, the company would be liable, though the owner may not prove the stock got on to the track at the point not fenced. In most cases proof of the very spot would be impossible.

As stock of the description named in the statute lawfully run at large, it was the design of the statute to afford some protection from hazards of trains running at high speed at all hours of the day and night, by fencing, and if this is omitted by the railroad companies, they are presumed to be guilty of negligence, without any proof other than their omission.

It is urged by appellants, that the plaintiff produced no evidence as to the owner of the land having received damages for the right of way, or had given notice to fence, or that a fence was necessary at the point where his heifer came on the track, or that the road was not fenced at that point.

There are no exceptions of this character in the enacting clause of the first section of the act of 1855, and if the owners of the land had received a specific sum as compensation for fencing along the line, or had agreed to build and maintain a lawful fence, or had received compensation for building and maintaining a lawful fence, by way of damages in the condemnation of the land, as provided in the second section, it

was the business of appellants to prove it. It was no part of the plaintiff's case—the *onus* was not on him, but on the company, who were in possession of the fact, if it existed. The first section of the act required the company to fence their roadway, save at certain excepted places, of which the place where this animal was killed was not one. The proof negatived all the exceptions, and showed affirmatively the owner of the land had not agreed to erect a fence. We are at a loss to perceive in what respect the plaintiff's case was not brought fully within the act of 1855.

The killing is proved to have occurred at a place where this company was required by law to erect a fence; consequently no proof of actual negligence was necessary, and the instruction was properly refused.

We do not deem it necessary to contest the argument presented by appellants, that the act of 1869 provides a new remedy, and resort must be had to that, as that is specific, and repeals the law of 1855 to that extent.

We do not so understand the act of 1869. It trenches, in no respect, upon the provisions of the act of 1855, but affords a more summary mode by which to effect the object of that act, giving to the land-owner the right to build the fence at the cost of the company, and which, when built, will be the property of the company. It imposes no duty upon the land-owner to build the fence, but confers the privilege. The argument, therefore, based upon this supposed duty, falls, and no pretense of contributory negligence can be alleged. The land-owner and the railway company are not, in the sense claimed by appellants, wrongdoers, among whom contribution can not be enforced.

We are not apprised of any general law, in force in this State, prohibiting stock from running at large, nor of any statute modifying the act of 1855. Appellants contend that it is virtually repealed by the constitution, and the Eminent Domain act, passed in conformity thereto, in force July 1, 1872. It is urged that the law of 1855 was based on the principle

that railways were the absolute property of the railroad company—their private property—as fully so as the adjoining farms were the property of their respective owners; that when they condemned the right of way the fee vested in them, and, being such absolute owners, it was right they should he held rigidly to the fulfillment of their contracts with adjoining owners.

It is then urged, that the new constitution changed the old rule and established new principles in the management of railroads, for by section 12, of article 11, they are declared public highways; and by section 13, of article 2, the fee of land taken for railroad tracks, without consent of the owner thereof, remains in such owner, subject to the use for which it is taken.

As to the declaration in the constitution, that railways are public highways, they are so, as defined by this court in *The Central Mil. Tract R. R. Co.* v. *Rockafellow,* 17 Ill. 541. They are not common highways in the sense of public wagon roads, upon which every one may transact his own business with his own means of conveyance, but only in the sense of being compelled to accept of each and all, and take and carry to the extent of their ability.

By this clause in the constitution we fail to see any design on the part of its framers to relieve these companies from any liability imposed upon them by prior legislation. They still remain liable to the requirements of the acts of 1855 and of 1869.

As to the other clause, the facts in this case show the right of way of this company was acquired, if at all, long anterior to the adoption of the present constitution. The proof is, the killing took place in August, 1872, and the road had been opened for use more than six months prior thereto. The company, then, had the fee in the right of way, as we must presume, nothing being alleged or shown to the contrary. But whether they owned the fee or a perpetual easement, they were bound to fence the line of their road, and failing to do

34—68th Ill.

so they become liable in damages, without any proof of actual negligence. Negligence, in such cases, is presumed.

Discovering no error in the record, the judgment of the circuit court must be affirmed.

*Judgment affirmed.*