## Baltimore & Ohio S. W. Ry. Co. v. George Keck, by his Next Friend.

1. NEGLIGENCE—*What is Not—Question of Fact.*—It can not be said, as a matter of law, that a lad of fourteen years of age, on his way to school, within fifteen or twenty feet of a railroad track, and a train a quarter of a mile away, running to cross the track, is guilty of negligence. The question of negligence on his part is one of fact for the jury to answer.

2. RAILROADS—*Construction of Statutes as to Farm Crossings.*—The statute requiring railroad companies to build fences, etc., with gates or bars at farm crossings, when and where the same is necessary for the use of the proprietors of adjoining land, is in the nature of a remedial statute seeking to minimize the inconveniences to the occupant of the farm, and should not receive a narrow construction.

3. SAME—*Use of Farm Crossings.*—The use of a farm crossing, by members of the family of an occupant in passing from their home to a public highway, is as much a legitimate use in the eye of the law as driving ·hogs or cattle, or hauling grain or manure over the crossing. Although the duty of a railroad company to keep a farm crossing in safe

repair is not as rigorous as its duty to keep a public crossing in safe repair, it does not relieve the railroad company from the obligations imposed by the statute, to build and keep in repair such crossings.

4. SAME—*Notice to Repair Farm Crossings—Penalty.*—The obligation to build and keep in repair farm crossings arises upon the statutes requiring them to be constructed, and the further fact that if, upon failure to build or repair upon ten days' notice, the occupant may build or repair the same and collect twice the cost thereof, with one per cent interest a month from the company until paid. A notice is not required by the statute, but a penalty for failure to act, after notice, is provided.

5. SAME—*Care and Caution in the Use of Farm Crossings.*—The law requires of persons using a farm crossing over a railroad the exercise of a higher degree of care and caution to avoid injury from trains than it requires of persons using a public crossing at a public highway, and imposes upon the railway company a correspondingly less degree of care in the operation of its trains over a farm crossing than over a public crossing.

6. PLEADING—*Defects When Cured by Verdict.*—A defect in pleading, fatal on demurrer, is cured by verdict when the issue requires proof of facts defectively alleged, and without which proof, it is not to be presumed that the jury would have rendered the verdict.

7. SAME—*When Unnecessary to Allege Due Care.*—Where the declaration charges wanton and willful negligence, due care and caution need not be alleged or proven.

8. DAMAGES—*Jury May Estimate, When.*—In an action against a railroad company for personal injuries, where the damages claimed are for the loss of a leg, it is not necessary that any estimate of damages should be sworn to. The jury fix the damages from their general knowledge of the results of such injuries.

9. COSTS—*Giving a Bond for, Not Jurisdictional.*—The giving of a bond for costs is not a jurisdictional matter, and when the next friend of an infant is unable to give bond for costs, the case will not be dismissed for failure to file such a bond.

10. WAIVER—*Of the Right to Have the Jury Polled—Practice.*—The action of the court in telling the jury that if they agreed upon a verdict they should reduce it to writing, all sign it, place it in a sealed envelope, deliver it to the officer in charge, and then be discharged from further attendance for the term is a practice not to be commended, but where the parties are present at the time and do not object, the right to have the jury polled is waived.

**Action in Case,** for personal injuries. Trial in the Circuit Court of St. Clair County; the Hon. MARTIN M. SCHAEFER, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the February term, 1899. Affirmed. Opinion filed September 5, 1899.

HAMILL & LESTER, KRAMER, CREIGHTON & SCHAEFER and

Silas Cook, attorneys for appellant, contended that where a railroad company owes no duty to one to keep a private crossing in repair he can not recover for an injury sustained by his wagon thereon, caused by the crossing being out of repair. Mann v. Chicago, R. I. & P. Co., 86 Mo. 347.

Where a private or farm crossing is used for other than farm purposes there will be no liability upon the railroad company for an injury resulting from such use unless such injury is willful or wanton. The fact that persons for their own convenience use a farm crossing, in going to or returning from school, does not make the crossing a public one or create any new duties on the part of the railroad company. Atchison, Topeka & Santa Fe R. R. Co. v. Parsons, 42 Ill. App. 93; Harris, Damage by Corporation, 522.

At private crossings, the rules, both as to the rights and obligations of railroad and traveler, are somewhat different from those that govern at public highway crossings. A railroad company is not ordinarily bound to maintain or repair a private way over its tracks; but it may become obligatory upon it to do so, either by charter or contract. 4 Am. & Eng. Ency. of Law, 914; Keefe v. Sullivan County R. Co., 63 N. H. 271; Ferguson v. Virginia, etc., R. Co., 13 Nev. 185.

Farm crossings being in their nature private crossings, the precautions to be observed by tl ¬ailroad company are by no means the same as the duties laid down to such corporations at the intersection of public highways. 8 Am. & Eng. Ency. of Law (2d Ed.), par. 7, p. 433.

Where a railroad company acquiesces in the use of a private crossing, persons using it are mere licensees, and all that can be required of a company at such place is to look out for obstructions, and to use due care to avoid injury after being conscious of impending peril. Alabama & Great Southern R. R. Co. v. Linn (Ala.), 15 So. Rep. 508.

An adjoining owner who uses a farm crossing to send his children to school or to reach a highway, such acts being distinct from the operation of the farm, although not a

trespasser, is at most a mere licensee. The traveler who uses it is at most a mere licensee, who takes its license with all its concomitant risks and perils, and as a general rule the company owes him no duty greater than that which is permitted to a trespasser. Where the person using a crossing is a mere licensee he takes it as he finds it, and the company is not liable to him for an injury sustained because the crossing is not properly constructed. 3 Elliott on Railroads, pars. 1151 and 1154; Truax v. Chicago, etc., R. R. Co., 83 Wis. 547, 53 N. W. Rep. 842.

PERRIN, BAKER & CANBY, attorneys for appellee.

The regulations in regard to fencing railroad tracks and constructing farm crossings for the use of adjoining landowners, are police regulations in the strict sense of those terms. They have reference to the public security, both as to persons and property. I. C. R. R. Co. v. Willenborg et al., 117 Ill. 208.

Persons who are entitled to use a private crossing, may do so at all reasonable times, and in crossing they have a right to be on the right of way and on the track. Hence, they can not be regarded as trespassers; and it can not be said that a railroad company is liable only for gross negligence when an injury is inflicted upon a person passing over such a crossing with due care and caution. C. & A. R. R. Co. v. Sanders, 154 Ill. 536.

An action brought by the next friend of an infant without an order of appointment, or the filing of a bond for costs, will not be dismissed where neither the infant nor the next friend is able to give a bond. St. L., A. & T. H. R. R. Co. v. Reagan, 52 Ill. App. 488.

The giving of the bond for costs is not a jurisdictional matter. The I. C. R. R. Co. v. Latimer, 128 Ill. 163.

The right to have a cause tried by jury is a substantial right, as much so as the right to have the jury polled upon the return of their verdict into open court. Yet this right may be waived without express consent. Burgwin v. Babcock, 11 Ill. 28; Henrichsen v. Mudd, 33 Ill. 477; Phillips v. Hood, 85 Ill. 450.

Even in criminal cases where life and liberty are at stake, a prisoner on trial is not permitted to stand by and suffer irregular proceedings to take place, without objection, and afterward complain of them. Graham et al. v. The People, 115 Ill. 566; Bulliner v. People, 95 Ill. 394; Perteet v. People, 70 Ill. 171; McKinney v. People, 2 Gilm. 556.

MR. PRESIDING JUSTICE WORTHINGTON delivered the opinion of the court.

Suit for personal injuries.

The declaration contains six counts. The third count charges wanton and willful negligence. The gist of the other counts, after the usual allegations of operating a railway, etc., are, in substance, that Philip Keck, the father of George Keck, a boy about fourteen years old, residing with his father, lived on a farm which appellant's road crossed in an east and west line; that over a private way, leading from Philip Keck's house, north of the railway track, to the highway on the south side of the farm, there was a farm crossing maintained by appellant, and that it was the duty of appellant, under the statute, to keep said crossing in safe repair for those using it and residing on said farm; that appellant suffered it to become out of repair and unsafe for such use, in this, that the planks were rotten, worn down, and not securely fastened, and that the space between the edge of the plank and the north rail of the track was so wide as to be unsafe for those passing over it; and that in consequence of said conditions of said crossing the foot of appellee, George Keck, while on his way to school, and exercising due care in crossing said track, became caught fast in the space between said plank and the north rail of the track, and, while so caught, he was struck by appellant's train, improperly and negligently managed, causing the loss of his right leg below the knee.

To the declaration the general issue was pleaded; verdict and judgment for plaintiff for $5,000.

The evidence shows the speed of the train to have been about forty-five miles an hour. There was a curve about

1,400 feet from the crossing, for which distance the cross-ing was plainly visible. The engineer testifies, in sub-stance, that as he came around the curve, about a quar-ter of a mile from the crossing, he saw appellee just in the act of " making the crossing ;" that he took his eyes off the boy for a second, and when he looked again he stood right in the middle of the track ; that he tooted the whistle, and when about 300 or 400 feet from the boy he applied the brakes ; that he did not know the boy was caught ; that it took about eighteen seconds to run the quarter of a mile. He further testified that when he first saw the boy he was not on the track, but was running toward it ; that when he first saw him standing on the track he was about 500 feet from him.

Fred Carrington, the fireman, testifies that we were about 500 feet from the boy when I first saw him standing on the crossing ; that when about 450 feet from him he saw him give a kind of a jerk and throw up his hand, and just as he observed that the boy was caught, the engineer realized it also, and when probably 400 feet from the crossing he turned on the brake.

Without referring to the testimony of witnesses for appellee, we are not prepared to say from this evidence of appellant's servants and witnesses that the jury erred in finding that the boy was not negligent. It can not be said, as a matter of law, that a lad of fourteen years of age, on his way to school, within fifteen or twenty feet of a railway track, and a train a quarter of a mile away, run-ning to cross the track, is guilty of negligence. It is apparent that if he was in the middle of the track, as these witnesses testify, with the train 500 feet distant, he could have safely crossed over if his foot had not caught. The question of negligence on his part was one of fact for the jury to answer, and the evidence does not warrant inter-ference with their finding on this issue.

The same may be said as to the alleged negligence of appellant in failing to keep the crossing in repair, if the view of the law as to appellant's duty in this respect, as

stated in the instructions, is correct. The evidence shows that the plank next the rail had in the middle a decayed strip from two to three inches wide, and seven or eight feet long. There is a conflict in the evidence as to whether it was securely fastened to the ties, and as to whether these conditions tended to increase the liability of a foot's being caught in the space between the edge of the plank and the rail. It is also in evidence that when constructed this space was two and one-half inches wide, but by use its width at the top had been increased to three and one-half inches, and that the edge of the plank had become beveled, or rounded, and the plank somewhat worn. If it was the duty of appellant to keep the crossing in repair for the use of pedestrians living on the farm and passing over it in the ordinary demands of life, there is such evidence of neglect on the part of appellant that this court, recognizing the function of a jury in deciding questions of fact, will not interfere with their decisions.

The theory of the defense as to the crossing is that, being a farm crossing, the duty of the appellant was only to keep it in repair for agricultural purposes, and that the family of the tenant Keck, when passing over it, did so at their risk.

Counsel for appellant expresses this idea, in argument, as follows:

"There was no evidence introduced whatever of a contract on the part of the defendant railway company to maintain such crossing, but it was shown upon the trial that the crossing was a farm crossing, and as a.legal consequence to that fact, plaintiff, if he used such crossing for the purpose of going to school, and not for farm purposes, must have taken the risks incident to its use."

In support of this view of the law, the following instructions were asked by appellant, and refused:

"The court instructs the jury that in this State a railroad company is not required to construct and maintain private crossings for the accommodation of the children of adjoining proprietors in going to and from school, although such crossings may be reasonably necessary and convenient, and if an adjoining proprietor of land, or his chil-

dren, use a farm crossing for such purpose, then they are mere licensees and take all the risk of such use of a farm crossing, except that the railroad company, or its servants, will not willfully, wantonly, intentionally or by gross negligence, injure them."

" The court instructs the jury that by statute in Illinois a railroad company is not required to repair a farm crossing until after notice from the land owner or person for whose benefit the farm crossing is put in, and in this case, if no notice was given the railroad company that the crossing in question was defective and out of repair, then it was not in law the duty of the defendant railroad company to repair the same, and no recovery could be had for the injury resulting from the use of such defective crossing by the adjoining land owner, or those acting under him."

These instructions do not state the law correctly, and there was no error in refusing them.

The statute requires railroad companies to build fences, etc., with gates or bars at farm crossings, which farm crossings shall be constructed by such corporations when and where the same may become necessary for the use of the proprietors of the adjoining land. Sec. 68, Chap. 114, Starr & Curtis' Statute.

It is in the nature of a remedial statute, seeking to minimize the inconveniences to the occupant of a farm of a railroad crossing the farm, and should not receive a narrow construction. Certainly the "use" of a crossing by members of the family of an occupant in passing from their home to a public highway, is as much a legitimate "use," in the eye of the law, as driving hogs, or cattle, or hauling grain or manure over the crossing. It may be true that the duty of a railroad company to keep a farm crossing in safe repair is not as rigorous as its duty to keep a public crossing in safe repair—instructions given for appellant recognize this distinction—but the fact that the degree of duty may not be the same does not relieve the railroad company from the obligations imposed by the statute, and these obligations are to "build and keep in repair farm crossings." This is plainly seen from the statutes requiring them to be constructed, and the further fact that if, upon failure to

build or repair after ten days' notice, the occupant may build or repair and collect twice the cost, with one per cent interest a month from the company until paid. Ill. Cen. R. R. Co. v. Willenborg, 117 Ill. 203.

A notice is not required by the statute, but a penalty for failure to act after notice is provided. T., P. & W. R. R. Co. v. Pence, 68 Ill. 524; Sections 71 and 72, Chap. 114, Starr & Curtis' Statute.

The Illinois authorities cited by appellant do not sustain its position.

The Louisville, N. A. & C. R. Co. v. Rosa Red, 47 Ill. App. 662, refers to a public crossing only.

Atchison, T. & S. R. R. Co. v. Parsons, 42 Ill. App. 92, is the case of a farm crossing in which it was sought to be shown that by use recognized by the company it had become a public crossing. The court say, " The evidence was not sufficient to establish a change in the nature of the crossing," and further say that " Gillespie, who was driving the team at the time of the accident was not using the crossing under any right of an adjoining proprietor of the land." This case then is not pertinent. Hann v. C., R. I. & P. R. Co., 86 Mo. 347, holds that where the company owes no duty to the person injured there can be no recovery, but adds :

" If the party for whose benefit the crossing was built had, in like circumstances, been injured, a different question would, perhaps, be presented."

Nor does Ill. Cen. R. R. Co. v. Willenborg, cited by appellant and referred to *supra,* sustain his position. In it is said :

" The regulations in regard to fencing railroad tracks, and the construction of farm crossings for the use of adjoining land owners, are police regulations in the strict sense of these terms, etc. They have reference to public security, both as to persons and to property."

Chicago & A. R. R. Co. v. Sanders, 55 Ill. App. 87, affirmed in 154 Ill. 531, does not support appellant's contention that one living on a farm and passing over a farm crossing is a mere licensee. It only holds that such a person is not a trespasser, and asserts the duty of the company to use care not to injure him.

The court gave for appellant the following instructions:

"The court instructs the jury that railroad companies are not required to keep and maintain in repair farm crossings or private crossings in the State of Illinois for the convenience of adjoining land owners, so that the same will be safe for persons on foot at all times, but such farm crossings or private crossings for the convenience of· adjoining land owners are erected and maintained to facilitate the business of farming, and the law does not require that such crossings shall be kept in repair for the benefit of foot passengers to the same extent and in the manner as public crossings, the duty of the railroad company in such case being only to use ordinary care in the construction and maintenance of the same with reference to the uses and purposes for which such crossings are maintained, namely, for farm purposes."

"The court instructs the jury that the law requires of persons using a farm crossing, over a railroad, the exercise of a higher degree of care and caution, in the use of such farm crossing, to avoid injury from trains being operated along such railroad, than it requires of persons using a public crossing at a public highway, and the jury are instructed that the law imposes upon the railroad company a corresponding less degree of care in the operation of its trains over a farm crossing than if the place was a public crossing."

These stated the law fully as favorably upon the points referred to, if not more so, than appellant had a right to ask.

We find no error in the instructions given for appellees.

Forty-seven instructions were asked by appellant, of which thirty-two were given. The giving of so many instructions in a case like this tends to confuse rather than to instruct a jury.

Of the refused instructions six specified singly the six counts in the declaration, and told the jury to disregard them. There was evidence tending to support each count and no demurrer filed to any. Appellant pleaded the general issue. In such case, if there is one good count, and evidence to sustain it, judgment will not be reversed, although some of the counts might be held bad on demurrer. C. & A. R. R. Co. v. Anderson, 166 Ill. 572; C. City Ry. Co. v. Leach, 80 Ill. App. 363.

A defect in pleading, fatal on demurrer, is cured by verdict when the issue requires proof of facts defectively

alleged, and without which proof it is not to be presumed that the jury would have rendered the verdict. Con. Coal Co. v. Scheiber, 167 Ill. 539.

Specific objection is made to the third count, because due care on the part of the plaintiff is not alleged. The count charges wanton and willful negligence. Under such a count due care need not be alleged nor proved. I. C. R. R. Co. v. King, 179 Ill. 94.

The thirty-ninth instruction is misleading in telling the jury that "no damages can be recovered except such as have been proven by the sworn testimony of the witnesses to have been sustained by the plaintiff."

The damages claimed were for the loss of a leg. In such cases it is not necessary that any estimate of damages should be sworn to. The jury fix the damages from their general knowledge of the results of such injury. North C. St. R. W. Co. v. Fitzgibbons, 180 Ill. 466. Points in other refused instructions proper to be given were covered in instructions before the jury.

A motion to require a bond for costs was filed September 21st, and a rule entered to show cause by the fourth Monday of the term why the motion should not be allowed. The trial, so far as we can tell by the record, proceeded on the 21st and a verdict was rendered on September 23d. A cross-motion for leave to prosecute as a poor person was entered and leave granted to file an affidavit in support of this motion. The affidavit was filed September 30th and leave was so granted. The refusal to require a bond is not under the facts reversible error. It was made at so short a time before the commencement of the trial that, if granted, a continuance of the case would probably have been the result. The court in its discretion might have refused it on this ground. The fact, too, that an affidavit was filed on the 30th of September that would have entitled the plaintiff to prosecute as a poor person, with the further fact that a verdict for plaintiff has been rendered and is sustained by this court, indicates that appellant sustains no injury by the refusal of its motion.

When next friend of an infant is unable to give bond for costs, the case will not be dismissed for failure to file bond. St. L., A. & T. H. R. R. Co. v. Reagen, 52 Ill. App. 488.

The giving of a bond for costs is not a jurisdictional matter. I. C. R. R. Co. v. Latimer, 128 Ill. 163.

One of the reasons presented for a new trial, assigned as error, and now strongly urged for reversal of the judgment, is the action of the court in telling the jury that if they agreed upon a verdict that they should reduce it to writing, all sign it, place it in a sealed envelope, deliver it to the officer in charge, and then be discharged from further attendance for the term. The case was given to the jury on Friday of the second week of their service. This statement was made in the presence of the attorneys for appellant, but without consultation with them and without their expressed consent. The verdict was accordingly returned into court by the officer, the jurors having dispersed to their homes.

Appellant insists that under these facts there is no legal verdict, none having been returned into open court by the jury, and that he was thereby deprived of his right to poll the jury. It is also urged, that to have interposed objections to the directions of the judge, made in open court to the jury, would have tended to prejudice the jurors against appellant by preventing their discharge and return to their homes until after they had in person returned their verdict into court. The practice is not to be commended, and if decided upon the original opinion of this court would be held error. But the Supreme Court in this State, in Powell. v. Feeley, 49 Ill. 145, held that under such facts, a party present and not objecting, has waived his right to have the jury polled, and sustained a judgment based upon a verdict so returned. Following this decision, we hold this assignment of error does not present a sufficient cause for reversal. Judgment affirmed.