WILLIAM RUTHERFORD, and EDWARD THOMPSON, Administrators of JOHN RUTHERFORD'S ESTATE, Appellants, v. THE IOWA CENTRAL RAILWAY COMPANY, Appellee.

**Railroads:** NEGLIGENCE: RATE OF SPEED: INSTRUCTION. Negligence can not be predicated on the rate of speed that a train is moving through an open country; so that where there is nothing in the situation and surroundings demanding that the speed be slackened at a particular place, there is no error in failing to submit the rate of speed as a separate ground of negligence.

**Same:** NEGLIGENCE: WARNING SIGNALS. Where one upon a railway

track saw an approaching train at such a distance and for such a length of time as to enable him to pass out of danger, negligence can not be predicated upon failure of the trainmen to give warning signals: especially where the trainmen knew that he saw the train and appreciated his danger.

**Same:** CONTRIBUTORY NEGLIGENCE: DUTY OF TRAINMEN: INSTRUCTIONS.
3 Where plaintiffs decedent was negligent in remaining upon defendants railroad track after he saw an approaching train, the court was justified in instructing the jury that defendant owed him no duty until he was discovered in .a perilous situation: that the engineer was not bound to keep a lookout or to stop his train after discovering him, unless decedent could or would not leave the track; and that the engineer was justified in presuming that he would leave the track until the contrary was in some way manifest, whether decedent was a trespasser or a licensee.

**Railroads:** PRIVATE CROSSINGS: CATTLE GUARDS: WING FENCES.  A rail-
4 way company is not required either by the statute or the common law to construct cattle guards and wing fences at private crossings, unless requested by the landowner to do so.

**Railroads:** ESCAPE OF CATTLE: RECOVERY BY OWNER: CARE REQUIRED OF
5 COMPANY.  Although the owner of stock which has escaped onto a railroad right of way from a private crossing is licensed to go upon the right of way and recover the same, the railway company owes him no greater duty than if he were a trespasser; so that it is immaterial whether the court in its instructions treats him as a trespasser or a licensee.

**Same:**  A railway company is not required to exercise the same degree of care in keeping a lookout for persons on the track at open farm crossings that it is at public crossings.

**Same:** NEGLIGENCE: INSTRUCTIONS.  An instruction that plaintiffs decedent was confessedly negligent in being upon defendant's railway track where he was killed, and that defendant was only required to exercise reasonable care for his safety after he was discovered and his peril became apparent, did not have the effect of directing a verdict for defendant, when considered as it must be in connection with the instruction immediately following to the effect that such negligence would not defeat recovery, if after discovering his peril defendant failed to use ordinary care in stopping the train and preventing his injury.

**Same:**  Where the question of the engineers reason to believe that decedent would leave the track before he was struck by the engine was submitted to the jury, instructions that the engineer

was not bound to attempt to stop the train until it appeared that decedent was in a dangerous position and he had reason to believe he could not leave the track, and if the engineer had reason to believe that decedent could or would not leave the track and that the train could pass without striking him, then defendant was entitled to a verdict: and, that the engineer could presume decedent would leave the track unless he had some reason to believe otherwise, were proper.

**Special findings:** INTERROGATORIES. Special interrogatories calling for a finding of the distance from the engine to decedent when the engineer discovered that he was too near the track to clear the train; whether the engineer had reason to believe when he first saw decedent that he was not able to care for himself; and whether he then used all reasonable means to stop the train, called for ultimate and material findings of fact and were proper.

**Witnesses:** CROSS-EXAMINATION: DISCRETION. The extent of the cross-examination of a witness is largely a matter of discretion with the trial court, and no reversal will be ordered on account thereof unless an abuse of such discretion appears to the prejudice of the complaining party.

**Railroads:** NEGLIGENCE: LAST FAIR CHANCE. Evidence held to sustain the special finding of the jury that defendants engineer did not discover decedent's peril in time to avoid the accident, and upon discovery of his peril he used all reasonable means at his command to stop the train.

*Appeal from Poweshiek District Court.*—HON. W. G. CLEMENTS, Judge.

FRIDAY, JUNE 4, 1909.

ACTION to recover damages for the death of John Rutherford, deceased, who was struck by a train being operated upon defendant's road, and received injuries from which he died. The case was tried to a jury, resulting in a verdict for defendant, and plaintiffs appeal.—*Affirmed.*

*J. H. Patton,* for appellants.

*John I. Dille* and *Lyman & Lyman,* for appellee.

DEEMER, J.—Prior to April 30, 1907, John Ruther-
ford lived upon a twenty-acre farm, owned by his wife, in
Poweshiek County, Iowa.  He owned land in his own right
some few miles distant from where he resided.  At the
time mentioned he was about · seventy-six years of age,
but personally managed, not only the twenty acres of land
upon which he lived, but other lands as well.  Some years
prior to his death he received an injury to one of his
hips, and as a result one limb was rendered shorter than
the other, and he habitually walked with a cane.  The
defendant company operates a line of railway, running
north and south, through the twenty acres of land upon
which Rutherford lived, leaving the house, barn and or-
chard on the east side of the right of way, and the re-
mainder of the land, or about one-third, on the west side.
This one-third was either in grain or crops, and was used
for agricultural purposes.  In carrying its roadbed across
the twenty-acre tract the railway made a cut extending
across the entire tract, and varying in depth from prac-
tically nothing at the north side of the land to from seven
to ten feet at other places as it ran south.  At or near the
barn the railway company constructed a private crossing
across the right of way, in order that plaintiff might get
from one part of the land to the other.  This was done by
making an excavation or cut west of the right of way down
to the surface of the track which it crossed at grade, and
from the railway proper to the westward, until it came to
the surface of the ground, something like seventy feet west
of the roadbed.  At each end of this crossing there was a
gate, the east one being twenty-six feet from the east side of
the railway cut.  This crossing had no cattle guards or
wing fences, and nothing to prevent stock from going
either north or south upon defendant's roadbed when they
were let upon the right of way through the private cross-

ing. About one hundred and eighty feet north of this crossing the cut for the roadbed runs out, and, beginning where the roadbed again came to the surface, there was a fill running north for a distance of two hundred and· sixty feet. This fill as it went northward became very high; in some places about twenty-five feet. Nine hundred and seventy-five feet , north of the private crossing was another private crossing known as McDowell's.

On April 30th Rutherford, accompanied with his dog, started to drive four head of cattle over the defendant's right of way through the private crossing. When the cattle reached the roadbed they turned north, and ran up this roadbed to the McDowell crossing, where they were stopped by wing fences. The dog seems to have been with them at this time, and he got them turned around and started south again. The dog followed them down the track until some were struck and killed by a train. The train which struck these cattle also struck Rutherford, who was then upon the fill, above referred to, at a place where it was from eighteen to twenty-five feet higher than the natural surface of the ground. There was testimony tending to show that there was no place on top of this fill where plaintiff could have stepped off in safety to have avoided a passing train; but this was denied by defendant's witnesses, who testified that there was a place at the base of the ballast, and upon the top of the dirt fill, where Rutherford could have stood in safety. From the McDowell crossing to a point about one-half mile south of the Rutherford crossing defendant's line of railway was practically straight, with nothing to obstruct the view of engineer or fireman. South of the Rutherford crossing about one-fourth mile was a public highway crossing, and it was up grade from this point north to where Rutherford was killed. The train which did the damage came from the south. It was made up of an engine, a car of stock, and a way car, and it is

claimed that it was being run at a high and dangerous rate of speed.   However that may be, the cattle were first seen upon the track by one of defendant's employees at a point some two hundred feet north of the Rutherford crossing.   The exact point where the train was at that time is a matter in dispute.   This much is established, however, that it struck and killed three head of the animals at or about the Rutherford crossing, throwing them toward the west.   Continuing north, it struck Rutherford at a point between three hundred and three hundred and fifty feet north of the crossing, throwing him something like sixty or seventy feet toward the northeast.   The train was stopped at or near the McDowell crossing.   The engineer of the train said that he struck the cattle; that he saw Rutherford before the train struck him; that he (Rutherford) was standing with his cane in hand, facing the engine; and that he was making motions with his cane.   All agree that Rutherford was trying to get off the track before the train struck him.

The negligence charged against defendant, and for which recovery is sought, consists of (1) in running its train at a high and dangerous rate of speed; (2) failure to stop the train after coming in full view of Rutherford; (3) in negligently and recklessly running the train upon Rutherford after it saw, or by reasonable care and diligence should have seen him (Rutherford) upon the track; (4) failure to stop the train after it saw, or should have seen, Rutherford on the track.   It is further charged:

That at the time defendant's said train came in plain view of the said John Rutherford upon said track, and when said train was about a quarter of a mile distant from where the said John Rutherford was struck and killed, the said John Rutherford was then and there greatly excited, and in a place of peril upon said track, and at a place where he was not able to extricate himself therefrom in time to save himself from the rapidly approach-

ing train, which facts were then and there well known to defendant's servants and agents, who were then and there operating said train; that when said train came in view of the said John Rutherford upon said track, the said cattle were upon said track, and about halfway between said train and the said John Rutherford; that at the time the said John Rutherford excitedly signaled said train to stop by waving his cane and his arms; that the place on defendant's track where the said John Rutherford was at the time said train came in view was an exceptionally high fill, the grade descending abruptly on either side of defendant's track a distance of about forty feet, and said track and sides of said fill were at the time covered with snow and ice, which facts were at the time well known to the servants and agents of the defendant; that defendant's said agents and servants could, by the exercise of ordinary care, have stopped said train before it reached the said John Rutherford, and after they saw, or by the exercise of reasonable care could and should have seen, that the said John Rutherford was upon said track, and in an excited condition, and in a place of peril from which he could not extricate himself in time to prevent being struck by said rapidly approaching train; that after coming in view of said John Rutherford upon said track a quarter of a mile distant from where said John Rutherford was struck and killed defendant failed and neglected to give any warning, either by ringing the bell, or by blowing the whistle; that the defendant failed to slow down its train or stop the same before striking and killing the said John Rutherford.

The answer was a general denial and a plea of contributory negligence. The case was submitted to the jury upon certain specifications of negligence, and in answer to special interrogations the jury made the following findings: "How far from the decedent was the defendant's engine when the engineer first discovered that decedent was not far enough east to clear the train? Answer: Three to five feet. Did the engineer in charge of the train, at the time he first saw the decedent, have reason to believe that the decedent was not, for some reason,

able to care for himself? Answer: No. When the engineer in charge of the train first saw the decedent on the fill, did he use all reasonable means at his command to stop the train? Answer: Yes."

I. The first point made for a reversal is that the court erred in not submitting to the jury the question of the rate of speed of the train as a separate ground of negligence, and in not submitting the question of defendant's failure to give warning signals after it discovered Rutherford upon the track in a place of peril. It is the rule, not only in this court, but of the authorities generally, that no rate of speed in a train moving over and in an open country is negligence. *Kinyon v. Railroad,* 118 Iowa, 349; *Hartman v. Railroad,* 132 Iowa, 582. There is nothing in the case to show that the situation was such as to demand that the speed of the train be slackened at this particular place by reason of its situation and surroundings. So far as shown, neither the defendant nor its employees had any reason to apprehend that there would be either cattle or men at this particular place. There was no more reason, then, for slackening speed at this particular place than at any other until the presence of cattle or of men were actually discovered upon the track. So that there was no error in failing to submit the rate of speed of the train as an independent ground of negligence.

As to signals, it is not claimed that defendant omitted to give any of the statutory signals. The contention here is that, after seeing the cattle and the man upon the track, warning signals should have been given, and that these were negligently omitted by defendant company. The trouble with this contention is that, according to the testimony, Rutherford saw the train at such a distance, and for such a length of time, as to have enabled him to get off the track, and knew it was approaching him, and a warning signal

*1. RAILROADS: negligence: rate of speed: instruction.*

*2. SAME: negligence: warning signals.*

would have done no good. Moreover, the record clearly shows that, when any of defendant's employees · saw Rutherford, he was cognizant of the approach of the train, and must have known of its danger to him. Absence of warning signals could have been of no benefit to him, and failure to give them was not the proximate cause of the injury. There was no error in refusing to submit this specification of negligence.

II. In several instructions the court charged that Rutherford was a trespasser upon defendant's 'track, and was guilty of contributory negligence in being in such a place. It further instructed that under such circumstances defendant owed him no duty until after he was discovered upon the track, and after his peril became apparent to the engineer. The court also instructed that the engineer was not bound to keep a lookout for Rutherford, and was not guilty of negligence in failing to look ahead for persons upon the track. It also instructed as follows: "And in this case, after the said Rutherford was discovered on the track by the engineer, the engineer was under no obligation to attempt to stop the train, unless it was apparent to the said engineer that the said John Rutherford was in a dangerous position, and he had reason to believe that the said Rutherford could not leave the track. And in this case, if the engineer had reason to believe said Rutherford would or could leave the track, and the train would pass without striking him, then your verdict should be for the defendant." It also gave the following:

If you find from the evidence that John Rutherford could have stepped off the track a sufficient distance to avoid being struck by the train without falling down the embankment, and he failed to do so, then he would be guilty of contributory negligence; and, if you so find, your verdict should be for the defendant. An engineer operating a locomotive may rightfully presume that a

*3. SAME: contributory negligence: duty of trainmen: instructions.*

person on the railroad track will leave it upon the approach of his train until the contrary is, in some way, manifested to him. It is not the law, that when a human being is discovered on the track, an engineer must stop his train, unless he has some reason to believe that for any reason the person will not leave the track. Therefore, if you find from the evidence that when the engineer saw the deceased upon the track, the engineer had no reason to believe that the deceased was in a perilous situation, then your verdict should be for the defendant.

These instructions are challenged, and it is contended that Rutherford was not a trespasser upon the track. For the moment we may assume that he was not; but it is evident that, unless there be some excuse which does not appear in this record, he (Rutherford) was guilty of contributory negligence in going upon the railway track, and continuing thereon after he saw the approach of defendant's train. As applied to the doctrine of contributory negligence, there was no error in the instructions.

We take it that the claim of error in the instructions with reference to Rutherford's being a trespasser is bottomed upon the proposition that, if he were a licensee upon the property, or was there in virtue of an implied invitation, it was the duty of the defendant to have kept a lookout to discover him upon the track, and that, as the engineer did not see him until he was within one hundred and sixty feet of the place where he was struck, which was so near that he could not have stopped the train, he was guilty of negligence in not keeping a lookout to see if any one was on the track. This aspect of the case calls for a determination of the question as to whether deceased was upon the track at such time and place as that defendant was bound to keep a lookout for him. The exact point made here is that, as defendant did not construct wing fences and cattle guards at the Rutherford crossing, ani-

4. RAILROADS: private crossings: cattle guards: wing fences.

mals using the said crossing were likely to go upon the road, and follow the right of way in either direction until they came to a guard and wing fences, and, having reached such point, they were likely to be killed, and were a menace to the traveling public; that in such situation there was an implied invitation to the owner to go upon the track to recover his animals; that in accepting such invitation he was not a trespasser, but, being there by invitation and as of right, it was the duty of the railway company to keep a lookout for him; and, that if it failed to do so, it was negligent. The trouble with this contention is that it assumes a duty upon defendant's part which is not created by statute, and did not exist at common law; that is to say, it assumes that it was defendant's duty to construct cattle guards and wing fences at the Rutherford private crossing. This duty is not imposed by law. Cattle guards and wing fences are only to be erected at public crossings, unless the owner of a private crossing requests them. See Code, section 2054, 2057, 2022. *Bartlett v. Railroad,* 20 Iowa, 188.

Of course, if the owner knows that his stock have escaped on the railway right of way, he is undoubtedly licensed to go upon the right of way to recover them, not only to save himself from loss, but also to protect the railway property. But in so doing he is a bare licensee, and the railway company owes him no higher duty than if he were a trespasser. *Masser v. Railroad,* 68 Iowa, 602, *Thomas v. Railroad,* 103 Iowa, 649; *Richards v. Railroad,* 81 Iowa, 426; *Thomas v. Railroad,* 114 Iowa, 169.

5. RAILROADS: escape of cattle: recovery by owner: care required of company.

A railway company is not required to use the same care toward persons using private crossings as it is toward those who are using public ones. *Balt. R. R. v. Keck,* 84 Ill. App. 159. It was immaterial then whether the trial court called Rutherford a trespasser or a bare licensee, for the duty which the de-

6. SAME.

fendant owed him was the same in either case; in other words, it was not required to keep a lookout for him because of the open farm crossing.   There is no showing that Rutherford ever requested the construction of cattle guards or wing fences, and, under the law as it stood when accident occurred, the defendant was not bound to construct them in the absence of such request.   Chapter 96, 32d General Assembly, was not in force when Rutherford met his death, and we have no occasion to consider the effect thereof in its bearing upon the law of the case. Even should we announce that defendant was derelict in its duty to maintain cattle guards, wing fences, etc., at the crossing, it would not follow that Rutherford was anything more than a bare licensee in attempting to rescue his cattle which had gone upon the right of way.   Appellant's counsel place great reliance upon *Liming v. Railroad,* 81 Iowa, 246.   That case is not in point.   It was an action for damages caused by setting out of fires, and the sole question was whether or not defendant's act was the proximate cause of the injuries received by plaintiff while attempting to extinguish the fire.

III.   Instruction No. 3, given by the court reads as follows:  "You are instructed that John Rutherford was confessedly negligent in being on the grade and railway track of the defendant, he being a trespasser at the time he was struck by the defendant's locomotive, and this negligence contributed to his death; and, under these circumstances, the defendant company owed him no duty, except the exercise of ordinary and reasonable care and diligence, after he was discovered on the track and grade, after his peril, if any, became apparent to the engineer on the train in question, to avoid injury to him."   This should be read in connection with No. 4, reading in this wise:  "The fact that the plaintiff was guilty of contributory negligence by going upon the defendant's railway track will not defeat

7. SAME:
   negligence:
   instructions.

his recovery if, after he was discovered in a dangerous position, if any, the defendant and its engineer failed to use ordinary care in stopping the train and in preventing the injury to the plaintiff, as hereinafter more fully explained." The third paragraph of the charge is challenged because of the fact that it states unqualifiedly that Rutherford was a trespasser, and confessedly guilty of contributory negligence. The effect of this statement, according to appellant's contention, was to direct a verdict for defendant. But the very next instruction says that, even though Rutherford were negligent, this would not defeat recovery, provided that defendant, after discovering him in a dangerous position, failed to use ordinary care to avoid injuring him. When these instructions are read together, no prejudicial error appears.

IV. Instructions 12 and 13, already quoted, are challenged because it is said that thereby defendant's negligence was made to depend upon the belief of the engineer in charge of the train as to whether or not Rutherford could or would leave the track before the engine struck him. The rules announced in these instructions are correct, especially where, as in this case, the question of the engineer's "reason to believe" was submitted to the jury as a question of fact. The instructions have support in *Thomas v. Railroad,* 114 Iowa, 171; *June v. Railroad,* 153 Mass. 79; *Burg v. Railroad,* 90 Iowa, 106. There is no error in the instructions.

8. SAME.

V. Error is predicated upon the submission of the special interrogations to the jury. Each of these seems to call for an ultimate and material fact, and the court was justified in submitting them. Code, section 3727. That they called for answers which were material, see the *Thomas* case, *supra.*

9. SPECIAL FIND-
INGS: inter-
rogatories.

VI. Plaintiffs made the engineer of the train their own witness, and it is contended that his cross-examination

was without limit and prejudicial. The extent of cross-
examination of any witness is largely a mat-
ter of discretion with the trial court, and
no reversal will be ordered on account there-
of, unless it appears that there was an abuse of this dis-
cretion to the prejudice of the complaining party. *Player
v. Railroad,* 62 Iowa, 726; *Glenn v. Gleason et al.,* 61
Iowa, 32. No such abuse of discretion is here shown as
to justify a reversal.

10. WITNESSES: cross-examination: discretion.

VII. Lastly, it is insisted that the answers to the
special interrogations are without support, and that the gen-
eral verdict is contrary to the testimony. The case was fairly
submitted to the jury upon what is now de-
nominated, for want of a better term, "the
doctrine of last fair chance," and the in-
structions with reference thereto are in line with the rules
applicable. When the engineer of the train approached
the Rutherford crossing, he discovered the cattle at or
near that place, and applied the emergency air brake, but
could not, and did not, stop in time to avoid throwing
them off and killing them. The engineer testified that he
saw the cattle when he was about two hundred feet away
from them, and that he was watching them until after they
were thrown from the track; that he did not see Ruther-
ford until after he had passed the cattle and released his
brake, when he discovered Rutherford about one hundred
and sixty feet ahead of the engine, standing upon the fill,
and making some motions with his cane; that he (Ruther-
ford) was standing about the end of the ties on the east
side of the track. This engineer also testified that, as soon
as he saw Rutherford, he put on the emergency brake,
and that he kept it on until after the deceased was struck.
He further testified that he did not discover that the en-
gine was likely to strike Rutherford until it was within
two or three feet of him, and that there was plenty of
room upon the top of the fill for him to stand in and have

11. RAILROADS: negligence: last fair chance.

avoided the collision.   There is also testimony to the effect
that all reasonable means were used to stop the engine
after Rutherford's position upon the track was discovered.
There is a decided and sharp conflict in the testimony re-
garding there being a place outside the ballast, and upon
the top of the fill, where Rutherford might have stood and
escaped injury, but this was for the jury, and it may
have found that there was a shelf there of from one to
two feet wide upon which he might have stood and es-
caped injury.   There is no doubt under the testimony that
he was trying to get off the track to avoid a collision, and
that he saw the on-coming train in time to have done so
had he been alert in his movements.   The issuable facts
were presented to the jury upon nonprejudicial instruc-
tions, and the jury found for defendant.   With this find-
ing plaintiffs, under our system of jurisprudence, must
be content.   The accident was most unfortunate, and the
loss of human life is always to be regretted; but, in the
absence of an affirmative showing of negligence, defend-
ant should not be held responsible therefor.

No prejudicial error appears, and the judgment must
be, and it is, *affirmed.*